# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2002

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Antonio Alberto Sebastian, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: December 12, 2005
Filed:  February 6, 2006

_____

Before MELLOY, COLLOTON, and BENTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Antonio Alberto Sebastian was convicted of illegal re-entry to the United States, in violation of 8 U.S.C. § 1326(a), and sentenced to 46 months' imprisonment. He appeals his sentence, and we affirm.

Sebastian is a citizen of Guatemala. While in the United States in 1998, he was convicted of child molestation in Georgia state court and sentenced to ten years' imprisonment. In October 1998, he was released from prison and deported.

Notwithstanding his deportation, Sebastian returned to the United States and repeatedly applied for, and received, Employment Authorization Documents. In 2003, he was deported a second time. In 2004, after applying to renew his Employment Authorization card, he was arrested and charged with illegal re-entry. He pled guilty, and a presentence investigation report ("PSR") was prepared. In calculating the advisory guideline range, *see United States v. Booker*, 125 S. Ct. 738, 757 (2005), the PSR recommended a base offense level of 8, *see* USSG § 2L1.2(a), and an additional 16-level increase for re-entry after a conviction for a crime of violence, *id.* § 2L1.2(b)(1)(A). The PSR also recommended a three-level downward adjustment for acceptance of responsibility, *see* USSG § 3E1.1(a), (b), for a total offense level of 21. With a criminal history category III, the PSR calculated a guideline range of 46-57 months.

Sebastian objected to the 16-level enhancement and to the criminal history calculation. He also filed a sentencing memorandum arguing why a sentence within the advisory guideline range would not be appropriate in light of the sentencing factors outlined in 18 U.S.C. § 3553(a). The district court[1] considered Sebastian's objections, but found that the guideline range had been accurately calculated and that a sentence at the low end of the advisory range was reasonable in light of § 3553(a). The court thus imposed a sentence of 46 months.

On appeal, Sebastian does not dispute the district court's calculation of the advisory guideline range. He argues, however, that his sentence is unreasonable because the district court weighed the advisory guidelines too heavily and failed properly to consider the other factors set forth in § 3553(a). In particular, Sebastian asserts that the district court overlooked his alleged confusion about whether he was actually permitted to return to the United States, the disparity between his sentence

---

[1]The Honorable Rodney W. Sippel, United States District Judge for the Eastern District of Missouri.

and one that he would have received if he were sentenced in a district using "fast-track" procedures for immigration cases, and the fact that his conviction for child molestation was counted under the guidelines both for purposes of his offense level and his criminal history category.

We review the ultimate sentence imposed for unreasonableness, *Booker*, 125 S. Ct. at 765-66, and a properly calculated guidelines sentence is presumptively reasonable. *See United States v. Tobacco*, 428 F.3d 1148, 1151 (8th Cir. 2005). Reasonableness review is "akin to abuse of discretion review," *United States v. Rogers*, 423 F.3d 823, 829 (8th Cir. 2005) (internal quotation and ellipses omitted), and a guidelines sentence may nonetheless be unreasonable where a district court gives significant weight to an improper or irrelevant factor, fails to consider a factor that should have been given significant weight, or otherwise commits a clear error in judgment in weighing the sentencing factors. *Tobacco*, 428 F.3d at 1151.

Sebastian's most substantial argument is that the use of early disposition or "fast-track" programs for immigration cases in certain judicial districts creates unwarranted sentence disparities among defendants based only on the location in which an alien is apprehended. *See* USSG § 5K3.1. Because 18 U.S.C. § 3553(a)(6) requires the district court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," Sebastian argues that the more favorable treatment of aliens with similar records and similar offense conduct in judicial districts with fast-track programs makes it unreasonable to apply the advisory range to him.

In 2003, Congress directed the Sentencing Commission to promulgate a policy statement "authorizing a downward departure of not more than 4 levels if the Government files a motion for such departure pursuant to an early disposition program authorized by the Attorney General and the United States Attorney." Prosecutorial Remedies and Other Tools Against the Exploitation of Children Today ("PROTECT")

Act, Pub. L. No. 108-21, § 401(m)(2)(B), 117 Stat. 650, 675 (2003). The directive apparently was motivated by the large volume of immigration cases presented for prosecution in certain judicial districts, and the perceived need for an administrative mechanism to permit more efficient processing of these cases. *See* 149 Cong. Rec. H2405, 2421 (daily ed. Mar. 27, 2003) (commentary to an amendment offered by Rep. Feeney). The Commission followed the congressional directive by adopting USSG § 5K3.1, concerning "Early Disposition Programs," which provides that "[u]pon motion of the Government, the court may depart downward not more than 4 levels pursuant to an early disposition program" authorized by the Attorney General and the United States Attorney for the district. Since then, the Attorney General has authorized such programs in several districts along the southwest and western borders of the United States, as well as in Nebraska and North Dakota, but not in Eastern Missouri. (Gov't App. at 8 n.3).

These early disposition programs do create sentence disparities among defendants with similar criminal records who commit similar offense conduct. The disparity is based solely on geography, and this has prompted complaints that "it is difficult to imagine a sentencing disparity less warranted than one which depends on the accident of the judicial district in which the defendant happens to be arrested." *United States v. Bonnet-Grullon*, 53 F. Supp. 2d 430, 435 (S.D.N.Y. 1999), *aff'd*, 212 F.3d 692 (2d Cir. 2000); *see also United States v. Santos*, No. 05 Cr. 522, 2005 WL 3434791, at *6 (S.D.N.Y. Dec. 12, 2005). The command that courts should consider the need to avoid "unwarranted sentence disparities," however, emanates from a statute, and it is thus within the province of the policymaking branches of government to determine that certain disparities are warranted, and thus need not be avoided.

In this instance, Congress and the President, by directing that the Sentencing Commission provide for guideline departures in certain judicial districts, "concluded that the advantages stemming from fast-track programs outweigh their disadvantages, and that any disparity that results from fast-track programs is not 'unwarranted.'"

*United States v. Perez-Chavez*, No. 2:05-CR-00003PGC, 2005 U.S. Dist. LEXIS 9252, at \*21 (D. Utah May 16, 2005). There may be good reasons to question this policy decision, *id*. at \*35-38, but to require the district court to vary from the advisory guidelines based solely on the existence of early disposition programs in other districts would conflict with the decision of Congress to limit the availability of such sentence reductions to select geographical areas, and with the Attorney General's exercise of prosecutorial discretion to refrain from authorizing early disposition agreements in Eastern Missouri. The district court in this case, after considering all of the factors in § 3553(a), concluded that a sentence of 46 months was appropriate, and we do not think the sentence disparities arising from fast-track programs makes this sentence unreasonable for Sebastian. *Accord United States v. Morales-Chaires*, 430 F.3d 1124, 1130-31 (10th Cir. 2005); *United States v. Hernandez-Cervantes*, No. 05-5414, 2005 WL 3529114, at \*3 (6th Cir. Dec. 23, 2005) (unpublished); *cf. United States v. Martinez-Flores*, 428 F.3d 22, 30 n.3 (1st Cir. 2005).

We find Sebastian's other arguments unavailing as well. His claim of confusion about whether he was permitted to return to the United States is largely undermined by his admission of guilt to the crime of illegal re-entry, and while the district court determined that a sentence at the low end of the guidelines was appropriate in light of Sebastian's assertion of mitigating circumstances, we do not believe it was a clear error in judgment to sentence within the advisory range. Nor do we believe the district court abused its discretion by declining to vary from the advisory range based on asserted "double-counting" of Sebastian's state conviction in both his offense level and his criminal history. The Sentencing Commission reasonably concluded that a prior felony of this type should increase both the offense level and the criminal history score, *see United States v. Dyck*, 334 F.3d 736, 740 (8th Cir. 2003), and it was not unreasonable for the district court to follow the same approach of punishing certain previously deported aliens more severely than others.

Finally, Sebastian suggests that the 16-level enhancement for his prior felony conviction was excessive, because the Commission's advisory enhancement does not distinguish among felonies based on their relative severity. The guideline does enumerate a subset of all felonies that qualify for the enhancement, USSG § 2L1.2(b)(1)(A), and the current version of the guideline embodies "a more nuanced sentencing scheme" than its predecessor, "providing for graduated sentencing enhancements of between 8 and 16 levels depending on the seriousness of the prior [aggravated] felony conviction." *Dyck*, 334 F.3d at 741. But even if it may be reasonable in some cases to vary from the recommended 16-level increase when an enumerated felony is viewed as less aggravating than others in the class, we conclude that there are no extraordinary mitigating circumstances that made it unreasonable for the district court to follow the recommended enhancement with respect to Sebastian's prior conviction at age 35 for sexual intercourse with a 12 year-old child.

For these reasons, the judgment of the district court is affirmed.

_____