**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**May 18, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

JAVIER FLORES-PEREZ, a/k/a Javier
Flores Peres,

     Defendant-Appellant.

No. 05-4182

(D.C. No. 2:05-CR-00005-TS)

(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE** and **HARTZ**, Circuit Judges, and **KRIEGER**, District Judge.[**]

After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of this
appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is, therefore,
ordered submitted without oral argument.

This is a direct criminal appeal in an illegal reentry case. The defendant, Javier

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

[**] The Honorable Marcia S. Krieger, United States District Judge for the District of
Colorado, sitting by designation.

Flores-Perez, appeals only his sentence. He argues that the district court failed to

consider the sentencing disparities created by fast-track programs[1] in other jurisdictions.

As a result, he contends that his sentence is unreasonable as a matter of law. We exercise

jurisdiction pursuant to 28 U.S.C. § 1291 and affirm Flores-Perez's sentence.

I.

On January 5, 2005, a grand jury returned a one-count indictment charging Javier

Flores-Perez with illegal reentry of a previously removed alien in violation of 8 U.S.C. §

1326. That same day, the government filed a notice of sentencing enhancement based, in

---

[1] United States v. Morales-Chaires, 430 F.3d 1124 (10th Cir. 2005), contains the history and evolution of fast-track sentencing programs:

> Fast-track sentencing programs originated with federal prosecutors in states bordering Mexico, who were faced with increasing numbers of illegal reentry and other immigration cases. They accordingly designed programs whereby defendants accused of certain immigration offenses would plead guilty early in the process and waive their rights to file certain motions and to appeal, in exchange for a shorter sentence. The shorter sentence was accomplished either by charge-bargaining or by promising to recommend a downward departure at sentencing.

Id. at 1127. These programs met with Congressional approval with the passage of the PROTECT Act, Pub. L. No. 108-21, 117 Stat. 650 (2003).

> A provision of the PROTECT Act directed the United States Sentencing Commission to "promulgate . . . a policy statement authorizing a downward departure of not more than 4 levels if the Government files a motion for such departure pursuant to an early disposition program authorized by the Attorney General and the United States Attorney." Pub. L. No. 108-21, § 401(m), 117 Stat. at 675. The Sentencing Commission accordingly added a new Guidelines section, effective October 27, 2003, authorizing such four-level departures. See USSG § 5K3.1, p.s.

Id.

part, on Flores-Perez's 1999 felony conviction for attempted possession with intent to distribute a controlled substance. See id. § 1326(b)(2) (providing for a maximum term of imprisonment of twenty years for aliens whose prior removal was subsequent to a conviction for an aggravated felony). On April 25, Flores-Perez entered a plea of guilty pursuant to a written plea agreement.

The presentence report (PSR) recommended an adjusted offense level of 17 and a criminal history category score of V, resulting in an advisory guideline range of 46 to 57 months. Specifically, the PSR calculated a base offense level of 8 (U.S.S.G. § 2L1.2(a)), added 12 levels because Flores-Perez's prior 1999 conviction was a felony drug trafficking offense for which the sentence imposed was thirteen months or less (U.S.S.G. § 2L1.2(b)(1)(B)), and subtracted 3 levels for Flores-Perez's acceptance of responsibility (U.S.S.G. § 3E1.1). Further, Flores-Perez received 8 criminal history points based on his prior convictions, 2 points for committing the instant offense while on supervised release, and 1 point for committing the instant offense within two years after being released from confinement.

Flores-Perez filed a motion for downward departure, asserting four grounds: (1) a criminal history category V over-represented the seriousness of his criminal history or the likelihood he will commit future crimes (U.S.S.G. § 4A1.3); (2) a 12-level enhancement under § 2L1.2(b)(1)(B) for a prior felony drug trafficking offense overstated the seriousness of that prior offense; (3) his socioeconomic status and lack of formal education justified a lower sentence (18 U.S.C. § 3553(a)(1) and (2)); and (4) a lower

sentence was necessary to avoid an unwarranted sentence disparity caused by the existence of fast-track programs in other jurisdictions (18 U.S.C. § 3553(a)(6)).[2]

In denying Flores-Perez's motion for downward departure, the district court specifically addressed each of his arguments. Vol. II at 14-18. First, the district court noted that a departure under § 4A1.3 was not warranted, citing to Flores-Perez's thirteen prior convictions between 1994 and 2004. Among these convictions were misdemeanor assault, felony drug distribution, and illegal reentry. Id. at 15. The court also mentioned the existence of an outstanding warrant for Flores-Perez's arrest, and that Flores-Perez had been removed on at least three prior occasions. Id. Second, the court concluded that Flores-Perez's 12-level enhancement for his 1999 felony drug conviction accurately and fairly reflected the seriousness of the crime. Id. at 16. While the district court acknowledged that the amount of money involved in the drug transaction was not large, the district court focused on Flores-Perez's willingness to engage in the particular conduct. Id. Third, the district court found that Flores-Perez's socioeconomic status and educational background did not make his case so unusual as to place it outside the heartland of cases anticipated by the Guidelines. Id. at 17. The court stated that in light of Booker and § 3553(a)'s sentencing factors, a departure on those grounds would provide an unreasonable, unfair, and disparate sentence because Flores-Perez's

---

[2] As regards the fast-track argument, Flores-Perez's counsel informed the district court "that this argument does not necessarily go towards whether a downward departure is merited so much as the analysis that the court should perform under a reasonableness standard, . . . as has been articulated by Booker . . . ." Vol. II at 6.

socioeconomic and educational background was not dissimilar from other defendants who appeared before the court. Id. Finally, as to Flores-Perez's contention that the existence of fast-track programs in other districts resulted in unwarranted sentence disparities among similarly situated defendants who have been convicted of illegal reentry, the district court stated:

> While the court acknowledges the numerical disparity created between districts which employ the so-called fast track program for illegal reentries, this is not a matter appropriately before this court. This court declines to sua sponte impose a fast track program in this district, believing that in doing so it would ironically create disparity in and of itself.
> Further, the court cannot ignore the fact that the vast majority of districts in the federal court system do not have such a program. To attempt to account for the fast track program, which is in place in approximately 15 percent of the districts, would undermine the heart of the federal sentencing system, uniformity among similarly situated defendants. For these reasons, the court declines to depart downward on that basis.

Id. at 18.

The district court adopted the PSR and sentenced Flores-Perez to 46 months, which was at the bottom of the advisory guideline range. Id. at 19. In doing so, the court commented:

> While the sentencing guidelines are no longer mandatory, this court considers them to be well considered and a reasonable source to determine the appropriate sentence. The court specifically believes that the goals that are set forth in 18 U.S. Code 3553(a) require that the sentence be imposed as just stated, believing that it is a reasonable sentence under that provision of federal law.

Id. at 20.

### III.

Flores-Perez generally argues that the district court's failure to consider

unwarranted sentencing disparities arising from fast-track programs in other jurisdictions "contravene[s] the requirements of 18 U.S.C. § 3553,[3] and is unreasonable as a matter of law." Aplt. Br. at 20. He suggests that the widespread use of fast-track programs is

---

[3] 18 U.S.C. § 3553(a) states, in pertinent part:

(a) Factors to be considered in imposing a sentence. – The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider–

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established . . . by the Sentencing Commission . . .;

(5) any pertinent policy statement issued by the Sentencing Commission . . .;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

evidence that a sentence for illegal reentry that falls within the guideline range is greater than necessary to achieve the purposes set forth in 18 U.S.C. § 3553(a)(2), and thus, the district court should have departed downward from the advisory guideline range.[4]  In short, Flores-Perez maintains that "any sentence failing to account for these disparities is inherently unreasonable."  Id. at 4.

The essence of Flores-Perez's argument is that a sentence that fails to account for fast-track disparities is *per se* unreasonable.  This argument was recently rejected in United States v. Morales-Chaires.  The defendant in Morales-Chaires challenged his sentence under 18 U.S.C. § 3553(a)(6), arguing that "the district court's failure to sentence him below the suggested Guideline range amounted to permitting an 'unwarranted sentence disparity' between himself and other illegal re-entrants 'with similar records who have been found guilty of similar conduct,' and who are able to take advantage of a fast-track program."  430 F.3d at 1128.  In Morales-Chaires, we concluded that it was unnecessary to address "whether sentencing disparities caused by the existence of fast-track programs in some jurisdictions are or are not, or may be in certain circumstances, considered unwarranted under § 3553(a)(6)."  Id. at 1131.  Instead, we determined that the need "to avoid 'unwarranted sentencing disparities among defendant[s] with similar records who have been found guilty of similar conduct'

_____

[4] We note that to accept this proposition one must place less significance on § 3553(a)(4), which requires the sentencing court to consider the sentencing range suggested by the Guidelines.

[pursuant to § 3553(a)(6)] is but one of several factors for a court to consider in determining a reasonable sentence." Id. We then concluded that the defendant's sentence at the bottom of the advisory guideline range was reasonable. Id.; accord United States v. Sebastian, 436 F.3d 913, 915-16 (8th Cir. 2006) (determining that the existence of sentence disparities arising from fast-track programs did not render the defendant's sentence unreasonable).

We reject Flores-Perez's contention that his sentence is unreasonable. The sentencing disparity arguments raised here are the same as those we rejected in Morales-Chaires. Further, "a sentence that is properly calculated under the Guidelines is entitled to a rebuttable presumption of reasonableness" that "either the defendant or the government may rebut by demonstrating that the sentence is unreasonable when viewed against the . . . factors delineated in [18 U.S.C.] § 3553(a)." United States v. Kristl, 437 F.3d 1050, 1054 (10th Cir. 2006). Here, Flores-Perez does not challenge the district court's Guideline calculations, and notably, he raises his fast-track argument as the sole support for his contention that his sentence is unreasonable. The district court carefully considered the § 3553(a) factors in sentencing Flores-Perez and, after rejecting several grounds for downward departure, concluded that a sentence at the bottom of the advisory guideline range was reasonable. As stated in Morales-Chaires, the district court has many factors to consider when sentencing under § 3553(a), and sentence disparity is only one of them. 430 F.3d at 1131. The district court's failure to assign more weight to § 3553(a)(6) when sentencing Flores-Perez does not overcome the presumption that the sentence it

-8-

imposed was reasonable. We conclude that despite the existence of fast-track programs in other jurisdictions, which may enable defendants convicted of illegal reentry in those jurisdictions to obtain lesser sentences, Flores-Perez's sentence is reasonable.

AFFIRMED.

Entered for the Court


Mary Beck Briscoe
Circuit Judge