[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-16313

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 15, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 05-00060-CR-WTM-4

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

NOE AREVALO-JUAREZ,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(September 15, 2006)**

Before MARCUS, WILSON and COX, Circuit Judges.

MARCUS, Circuit Judge:

The United States appeals from a sentence of 30 months' imprisonment

imposed by the district court on Noe Arevalo-Juarez, a citizen of Mexico. Arevalo-

Juarez pleaded guilty to a charge of unlawful reentry into the United States after removal following a felony conviction, in violation of 8 U.S.C. §§ 1326(a) and (b). On appeal, the government argues that the trial court erred by sentencing Arevalo-Juarez to a term of imprisonment below the Guidelines range to alleviate sentencing disparities associated with the unavailability of early disposition or "fast-track" programs in the Southern District of Georgia. The government suggests that such disparities are an impermissible basis for sentencing.

After thorough review, we conclude that the district court erred in basing Arevalo-Juarez's sentence on sentencing disparities associated with early disposition programs inapplicable in the Southern District of Georgia. Accordingly, we vacate Arevalo-Juarez's sentence and remand for resentencing consistent with this opinion.

## I.

The essential facts in the case are these. On March 22, 2005, a grand jury returned an indictment against Arevalo-Juarez in the United States District Court for the Southern District of Georgia. The indictment charged that Arevalo-Juarez violated 8 U.S.C. §§ 1326(a) and (b) by unlawfully reentering the United States after having been removed after a felony conviction for second-degree child molestation. Arevalo-Juarez pleaded guilty to the indictment on October 12, 2005.

At the sentencing hearing, the district court adopted the factual statements made in the Presentence Investigation Report (PSI) as its findings of fact, and it adopted the PSI's calculations of the applicable advisory Guidelines sentence. The district court noted that application of the Guidelines produced a total offense level of 21, criminal history category III, 46 to 57 months' imprisonment, two to three years' supervised release, a fine of $7500.00 to $75,000.00, no restitution, and a special assessment of $100.

The district court then departed from the Guidelines range, imposing a sentence of 30 months' imprisonment, three years' supervised release with standard and special conditions of supervision, and an assessment of $100. The court noted that the term of imprisonment was 16 months lower than the minimum sentence recommended under the Guidelines. The court observed that it had set the defendant's sentence to effectively "reduc[e] the guideline range four offense levels." It explained its ruling this way:

> [W]ithout this adjustment there will be a disparity in sentencing between this defendant and like defendants who are sentenced in border states where the Attorney General of the United States has authorized early disposition or fast-track programs. In this Court's opinion it should not make any difference in what state you committed the offense; it should be what the offense that you committed was compared to the offense committed by other defendants who might commit those offenses within fast-track programs.

> The Guidelines expressly provide that on a motion by the government, a

3

district court may grant a downward departure of up to four levels pursuant to an early disposition or "fast-track" program specifically authorized by the Attorney General and the United States Attorney in the district housing the program. United States Sentencing Commission, Guidelines Manual, § 5K3.1 p.s. (Nov. 2004).[1] Congress directed the Sentencing Commission to permit such departures in the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act (PROTECT Act) of 2003, Pub. L. No. 108-21 § 401(m)(2)(B), 117 Stat. 650, 675. As we explained in United States v. Anaya Castro, 455 F.3d 1249 (11th Cir. 2006) (per curiam):

> The fast-track departure is available to defendants who "agree to the factual basis [of the criminal charge] and waive the rights to file pretrial motions, to appeal, and to seek collateral relief (except for ineffective assistance of counsel)," United States v. Morales-Chaires, 430 F.3d 1124, 1127 (10th Cir. 2005) (quoting United States v. Meléndez-Torres, 420 F.3d 45, 52 (1st Cir. 2005)), but only in judicial districts that participate in a[n] "early disposition program authorized by the Attorney General of the United States and the United States attorney for the district in which the court resides." U.S.S.G. § 5K3.1.

Anaya Castro, 455 F.3d at 1251 (first alteration in original).

---

[1]The relevant Guidelines provision states:

§5K3.1. Early Disposition Programs (Policy Statement)

Upon motion of the Government, the court may depart downward not more than 4 levels pursuant to an early disposition program authorized by the Attorney General of the United States and the United States Attorney for the district in which the court resides.

USSG § 5K3.1 p.s.

The government objected to the sentence. It pointed out that an early disposition departure under § 5K3.1 was impermissible because no early disposition program was ever authorized by the Attorney General or the United States Attorney in the Southern District of Georgia. Moreover, the government argued, even if an early disposition program had been authorized in the district, Arevalo-Juarez would not have been eligible for early disposition anyway under the facts of his case, because the government had not moved for a departure, Arevalo-Juarez had not agreed to an appeal waiver, and Arevalo-Juarez's earlier offense was a crime of violence.[2] Finally, the government said that a four-level departure, the maximum allowable under an early disposition program, was unwarranted. The district court judge noted that he disagreed with the government's objection and stood by his sentence. The court then entered

---

[2]The PROTECT Act directed the Sentencing Commission to issue "a policy statement authorizing a downward departure of not more than 4 levels if the Government files a motion for such departure pursuant to an early disposition program authorized by the Attorney General and the United States Attorney." PROTECT Act § 401(m)(2)(B). On September 22, 2003, then-Attorney General John Ashcroft issued a memorandum to all United States Attorneys outlining the criteria he would use in determining whether to approve a United States Attorney's proposed early disposition program for a specific category of cases. Letter from John Ashcroft, U.S. Att'y Gen., to All Federal Prosecutors (Sept. 22, 2003), reprinted in 16 Fed. Sent'g Rep. 134 (2003). One of Attorney General Ashcroft's criteria was that the cases for which early disposition is available "do not involve an offense that has been designated by the Attorney General as a 'crime of violence.'" Id. at 135. The memorandum further stated that an early disposition program must require a defendant to enter a written plea agreement including an agreement to the factual basis of the offense conduct, a waiver of the pretrial motions described in Rule 12(b)(3) of the Federal Rules of Criminal Procedure, a waiver of appeal rights, and waiver of the opportunity to seek collateral relief under 28 U.S.C. § 2255 on a basis other than ineffective assistance of counsel. Id.

judgment on October 14, 2005, and the government timely filed a notice of appeal from the sentence.

II.

The principal issue in this appeal is whether sentencing disparities associated with the availability or lack of availability of early disposition programs in certain districts are a permissible consideration under 18 U.S.C. § 3553(a), which sets out the factors to be considered in imposing a sentence.

We start by noting that this is not a case where the district court calculated the Guidelines range incorrectly or erroneously applied a Guidelines departure based on a mistaken conclusion that the Guidelines contemplated and permitted such a departure. Plainly, the district court judge recognized that Arevalo-Juarez was <u>not</u> entitled to a departure under the terms of USSG § 5K3.1. That Guideline requires a "motion of the Government" and only authorizes departure "pursuant to an early disposition program authorized by the Attorney General of the United States and the United States Attorney for the district in which the court resides," <u>id.</u>, and the district court plainly realized that neither circumstance applied to Arevalo-Juarez. Rather, this is a case where the district court calculated the Guidelines correctly and then proceeded to impose a sentence outside the Guidelines range but within statutory limits. <u>Compare</u> <u>United States v. Crawford</u>,

6

407 F.3d 1174, 1181–82 (11th Cir. 2005) (vacating a sentence in a case where the district court granted a spurious Guidelines departure based on incorrect application of Guidelines provisions), with United States v. Williams, 435 F.3d 1350, 1354 n.2 (11th Cir. 2006) (per curiam) (affirming a sentence in a case where the district court imposed a sentence outside the Guidelines range pursuant to its discretionary authority).

Our task in reviewing the district court's actions is to determine whether the sentence the district court ultimately imposed was reasonable. United States v. Booker, 125 S. Ct. 738, 767 (2005); Williams, 435 F.3d at 1353 ("Under Booker, we review a defendant's ultimate sentence for reasonableness."). Our review is "deferential" and focuses on whether the sentence imposed fails to achieve the purposes of sentencing enumerated in § 3553(a). However, notably, "[a] sentence based on an improper factor fails to achieve the purposes of § 3553(a) and may be unreasonable[] regardless of length." United States v. Williams, No. 05-13205, 2006 WL 2039993, at *5 (11th Cir. July 21, 2006). The government adequately preserved an objection to the reasonableness of the ultimate sentence when it argued that the circumstances of the defendant's case did not warrant a four-offense-level "departure."

Among the factors a district court must consider in imposing a sentence is

7

"the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). On appeal, the government argues that when Congress directed the Sentencing Commission to provide for downward departures connected with early disposition programs, Congress anticipated that such departures would create sentencing disparities, so the resulting disparities are not "unwarranted" disparities within the scope of § 3553(a)(6). We agree.

Recently, in United States v. Anaya Castro, 455 F.3d 1249, we resolved this issue in the government's favor. In Anaya Castro, a defendant challenged his sentence, arguing that the district court had failed to consider sentencing disparities resulting from the absence of early disposition programs in the Northern District of Georgia. We rejected the defendant's argument, finding that "the district court properly considered each of the section 3553(a) factors and imposed a reasonable sentence." Id. at 1252. We further stated:

> Any disparity created by section 5K3.1 does not fall within the scope of section 3553(a)(6). When Congress directed the Sentencing Commission to allow the departure for only participating districts, Congress implicitly determined that the disparity was warranted. Anaya-Castro's interpretation of section 3553(a)(6) conflicts with the decision of Congress to limit the availability of the departure to participating districts . . . .

Id. at 1252–53 (emphasis added) (citations omitted).

We observed then, and we repeat, that a number of other circuits have

8

reached similar conclusions. See, e.g., United States v. Aguirre-Villa, No. 05-50978, 2006 WL 2349222, at *2 (5th Cir. Aug. 15, 2006) (per curiam) ("The refusal to factor in, when sentencing a defendant, the sentencing disparity caused by early disposition programs does not render a sentence unreasonable. . . . Congress must have thought the disparity warranted when it authorized early disposition programs without altering § 3553(a)(6)."); United States v. Hernandez-Fierros, 453 F.3d 309, 314 (6th Cir. 2006) ("[F]ast-track guidelines reductions were specifically authorized by statute due to the unique and pressing problems related to immigration in certain districts. As a result, such a disparity does not run counter to § 3553(a)'s instruction to avoid unnecessary sentencing disparities."); United States v. Perez-Pena, 453 F.3d 236, 244 (4th Cir. 2006) ("[T]here is no reason to believe that Congress intended that sentencing disparities between defendants who benefitted from prosecutorial discretion and those who did not could be 'unwarranted' within the meaning of § 3553(a)(6)."); United States v. Marcial-Santiago, 447 F.3d 715, 718 (9th Cir. 2006) ("[T]he disparity between Appellants' sentences and the sentences imposed on similarly-situated defendants who are prosecuted in fast-track districts is not unwarranted."); United States v. Martinez-Martinez, 442 F.3d 539, 542 (7th Cir. 2006) ("Given Congress' explicit recognition that fast-track procedures would cause discrepancies, we

9

cannot say that a sentence is unreasonable simply because it was imposed in a district that does not employ an early disposition program."); United States v. Jiménez-Beltre, 440 F.3d 514, 519 (1st Cir. 2006) (en banc) (finding that the early disposition scheme "certainly permits disparities[,] but they are the result of a congressional choice made for prudential reasons, implicitly qualifying the general aim of equality"); United States v. Sebastian, 436 F.3d 913, 916 (8th Cir. 2006) ("The command that courts should consider the need to avoid 'unwarranted sentence disparities' . . . emanates from a statute, and it is thus within the province of the policymaking branches of government to determine that certain disparities are warranted, and thus need not be avoided.").

In light of our holding in Anaya Castro, it was impermissible for the district court to consider disparities associated with early disposition programs in imposing Arevalo-Juarez's sentence, because such disparities are not "unwarranted sentencing disparities" for the purposes of § 3553(a)(6). The Fourth and Seventh Circuits have reached the same conclusion in appeals by the government. See United States v. Perez-Pena, 453 F.3d 236, 244 (4th Cir. 2006); United States v. Galicia-Cardenas, 443 F.3d 553, 555 (7th Cir. 2006) (per curiam). A fast-track guidelines reduction was specifically authorized by Congress because of the perceived unique and pressing immigration problems in certain districts. The

10

appropriate Guideline (§ 5K3.1), however, provides unambiguously that a defendant may benefit from its application <u>only</u> on motion of the government, and <u>only</u> if the Attorney General has authorized the early disposition program in the district. In this case, no motion was made by the government, and, indeed, it could not have done so in the United States District Court for the Southern District of Georgia, because neither the Attorney General nor the United States Attorney had provided for early disposition in that district. Plainly, Congress contemplated that discrepancies would arise because it structured the law the way it did. Here, the district court relied on an impermissible factor in sentencing outside the Guidelines range precisely because Congress limited the application of USSG § 5K3.1. Moreover, even if we were to accept the judge's premise that it would have been unfair to treat Arevalo-Juarez differently from similarly situated defendants in other districts, that argument fails. The PROTECT Act provides that the benefits of early disposition should only be available where federal prosecutors have authorized early disposition programs, and Arevalo-Juarez's case does not fit the category of cases in which federal prosecutors have decided to permit early disposition programs -- cases involving nonviolent offenders where, among other things, the defendant has waived the right to appeal or to seek collateral relief. Accordingly, we are constrained to vacate the sentence and remand for further

11

proceedings consistent with this opinion.[3]

VACATED AND REMANDED.

---

[3]We offer no opinion on whether a sentence of 30 months could be reasonable in this case based on other considerations. We only hold that it was impermissible to use the disparities created by USSG § 5K3.1 as the basis for imposing a sentence of 30 months.

WILSON, Circuit Judge, Concurring:

As the majority correctly points out, a sentencing court may not rely solely on a sentencing disparity created by the "fast-track" provision of the Sentencing Guidelines, U.S.S.G. § 5K3.1, in order to support a downward departure from the advisory guidelines range. I concur with this judgment based on our recent precedent *United States v. Anaya Castro*, 455 F.3d 1249 (11th Cir. 2006) (per curiam). In *Anaya Castro* we concluded that "[a]ny disparity created by section 5K3.1 does not fall within the scope of section 3553(a)(6)." *Id.* at 1252.

While *Anaya Castro* did not address the precise issue presented in this case, its reasoning controls the outcome here. In *Anaya Castro*, an appeal by a criminal defendant, we determined that a sentencing judge was not *required* to apply a downward departure based on a fast-track disparity. *Id.* In this case, however, the government appeals a downward departure from the advisory guidelines, arguing that the sentencing judge was not *permitted* to consider a fast-track disparity into consideration in issuing a below-guidelines sentence. In spite of the different posture of this appeal, because we reasoned in *Anaya Castro* that "Congress implicitly determined that the disparity [created by the fast-track sentencing program] was warranted," we hold today that a sentencing court is not permitted to downward depart from the advisory guidelines solely on the basis of a disparity

13

created by section 5K3.1. *Id.*

I write separately to emphasize that we make no determination as to whether Arevalo-Juarez's thirty-month sentence is reasonable in this case. After *Booker*, the ultimate determination in reviewing a sentence on appeal is reasonableness. *United States v. Booker*, 543 U.S. 220, 261, 125 S. Ct. 738, 765, 160 L. Ed.2d 621 (2005); *United States v. Winingear*, 422 F.3d 1241, 1244-45 (11th Cir. 2005). Sentencing courts are free to depart from the advisory guidelines range so long as the sentence is reasonable based on a "*proper consideration*" of the section 3553(a) factors. *United States v. Eura,* 440 F.3d 625, 637 (4th Cir. 2006) (Michael, J., concurring) (emphasis in original). Here we make no determination as to the reasonableness of Arevalo-Juarez's sentence, rather we find that the trial court based the sentence on an improper consideration by downward departing *solely* on the basis of the fast-track disparity.

On remand, the district court has the discretion to determine "[w]hether [the defendant] deserves a sentence below the advisory guideline range based on other factors." *United States v. Galicia-Cardenas*, 443 F.3d 553, 555 (7th Cir. 2006) (per curiam). To support a downward departure in this instance, the "sentencing court must identify the individual aspects of the defendant's case that fit within the factors listed in 18 U.S.C. § 3553(a), and in reliance on those findings, impose a

non-guidelines sentence that is reasonable." *Eura,* 440 F.3d at 634.

We have said that we will only reverse a sentence and remand for resentencing upon a finding of harmful error. *United States v. Nealy*, 232 F.3d 825, 829 (11th Cir. 2000). We affirm for harmless error in the sentencing context if we find that the sentencing court would have likely sentenced the defendant in the same way absent the error. *United States v. Williams*, 456 F. 3d. 1353, 1360 (11th Cir. 2006). The problem for Arevalo-Juarez is that we cannot conclude that the error was harmless because the lack of a fast-track program was the sole reason given by the district court to support the below-guidelines sentence.