

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-15-2007

# USA v. Garcia

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2025

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Garcia" (2007). *2007 Decisions.* Paper 1465.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1465

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No.  06-2025

UNITED STATES OF AMERICA

v.

ARTURO GARCIA
a/k/a
Arturo Garica-Estrada
a/k/a
Arturo Garcia-Galvan

Arturo Garcia,
Appellant

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal Action No. 05-cr-00244)
Chief District Judge: Honorable Yvette Kane

Submitted Under Third Circuit LAR 34.1(a)
March 8, 2007

Before: SLOVITER and AMBRO, <u>Circuit Judges</u>
POLLAK,[*] <u>District Judge</u>

(Filed:  March 15, 2007)

[*]Honorable Louis H. Pollak, Senior United States District Judge for the Eastern
District of Pennsylvania, sitting by designation.

## OPINION

AMBRO, Circuit Judge

Arturo Garcia pled guilty to one count of illegally reentering the United States in violation of 8 U.S.C. §§ 1326(a) and (b)(2). He appeals his criminal sentence as unreasonable under the factors set forth in 18 U.S.C. § 3553(a). *See United States v. Booker*, 543 U.S. 220, 258–65 (2005); *United States v. Cooper*, 437 F.3d 324, 326–28 (3d Cir. 2006). The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(1).

## I.

Garcia's sole argument on appeal is that his 36-month sentence is unreasonable because it is disparate as compared to similarly situated defendants from judicial districts with so-called "fast-track" programs. These programs exist in certain judicial districts

> [t]o expedite the handling of large volumes of cases involving persons accused of immigration offenses . . . . [They] allow defendants to obtain a downward departure in their offense level under the . . . Sentencing Guidelines in exchange for pleading guilty and waiving their right to file certain motions and to appeal.

*United States v. Martinez-Trujillo*, 468 F.3d 1266, 1267 (10th Cir. 2006). These programs were authorized by Congress in the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 ("PROTECT Act"), and their existence in any given judicial district is at the discretion of the Attorney General and the U.S. Attorney in that district. *See* Pub. L. 108-21, § 401(m), 117 Stat. 650, 675 (2003).

2

Even in the post-*Booker* world, the Sentencing Guidelines are "the 'strong force' that defines the starting point for all that follows[,] . . . necessarily [affecting]—and often defin[ing]—the ending point." *United States v. Grier*, 475 F.3d 556, 608 (3d Cir. 2007) (McKee, J., dissenting). Predictably, therefore, applying different Guidelines in the various judicial districts across the country has resulted in national disparities in criminal sentences.[1]

None of this, however, leads to the conclusion that a sentence deriving from a Guidelines calculation done in a district with no fast-track program is necessarily unreasonable. Importantly, 18 U.S.C. § 3553(a)(6) requires district courts to avoid "*unwarranted* sentence disparities" (emphasis added). Though some have argued that "it is difficult to imagine a sentencing disparity less warranted than one which depends on the accident of the judicial district in which the defendant happens to be arrested," *United States v. Bonnet-Grullon*, 53 F. Supp. 2d 430, 435 (S.D.N.Y. 1999), "Congress and the President . . . [have] 'concluded that the advantages stemming from fast-track programs outweigh their disadvantages, and that any disparity that results from fast-track programs is not "unwarranted,"'" *United States v. Sebastian*, 436 F.3d 913, 916 (8th Cir. 2006) (quoting *United States v. Perez-Chavez*, 422 F. Supp. 2d 1255, 1263 (D. Utah 2005)). "To require [a] district court to vary from the advisory [G]uidelines based solely on the

---

[1] *See* Erin T. Middleton, Comment, *Fast-Track to Disparity: How Federal Sentencing Policies Along the Southwest Border are Undermining the Sentencing Guidelines and Violating Equal Protection*, 2004 UTAH L. REV. 827.

existence of [fast-track] programs in other districts would conflict with the decision of Congress to limit the availability of such sentence reductions to select geographical areas . . . ." *Sebastian*, 436 F.3d at 916. As the Government correctly states, § 3553(a)(6) is not canonical while fast-track programs are heretical. Rather, both are the policy decisions of the Congress and, as such, have equal validity.

A district court's refusal, therefore, to vary from the advisory Guidelines range based on the nationwide sentence disparity created by fast-track programs does not render a sentence *per se* unreasonable, as we recently held. *See United States v. Vargas*, No. 06-1368, ___ F.3d ___, 2007 WL 518630, *2–3 (3d Cir. Feb. 16, 2007). This conclusion is consistent with every other court of appeals to have considered the issue. *See United States v. Roche-Martinez*, 467 F.3d 591, 595–96 (7th Cir. 2006); *United States v. Mejia*, 461 F.3d 158, 162–64 (2d Cir. 2006); *United States v. Castro*, 455 F.3d 1249, 1252–53 (11th Cir. 2006); *United States v. Hernandez-Fierros*, 453 F.3d 309, 312–14 (6th Cir. 2006); *United States v. Montes-Pineda*, 445 F.3d 375, 379–80 (4th Cir. 2006); *United States v. Martinez-Martinez*, 442 F.3d 539, 541–44 (7th Cir. 2006); *United States v. Jiménez-Beltre*, 440 F.3d 514, 519 (1st Cir. 2006) (*en banc*); *Sebastian*, 436 F.3d at 915–16; *United States v. Morales-Chaires*, 430 F.3d 1124, 1127–31 (10th Cir. 2005).

## II.

We have noted that, to facilitate our reasonableness review, "the record must show a true, considered exercise of discretion on the part of a district court, including recognition of, and response to, the parties' non-frivolous arguments." *United States v.*

*Jackson*, 467 F.3d 834, 841 (3d Cir. 2006). In this case, the record reflects the District Court's careful consideration of Garcia's arguments, including his contentions regarding the nationwide sentence disparities caused by fast-track programs:

> I have real concerns about the manner in which this program is authorized and administered. It doesn't make any sense to me that Congress would authorize the kind of disparities that we see here to control a problem of volume of cases.
> From the administrative standpoint, it makes sense to me that in those districts where there are huge numbers of cases, there should be additional judges to hear those cases, not some sort of dummying down of the [S]entencing [G]uidelines that are carefully crafted by Congress and by the Sentencing Commission to supposedly arrive at a fair and just sentence.
> How could what is a fair and just sentence in the Middle District [of Pennsylvania] not be fair and just somewhere else [and] deserve a sentence calculated on four points less when there's nothing to distinguish the cases? It just makes no sense to me.
> But I have looked at the cases that you cite. And I do think that those cases, including the Eighth Circuit case that's cited [*Sebastian*], that talk about this being a congressionally-sanctioned program and focus on the unwarranted aspect of the disparity make the most sense to me legally. This will never make sense to me from a public policy standpoint, but I think legally it makes some sense to me in the way those courts have addressed it.
> So for that reason, I'm going to adopt the reasoning of the Courts, the District Court in Utah [*Perez-Chavez*] and the Eighth Circuit Court, and find that there is not a disparity, an unwarranted disparity that would require a sentence outside the [G]uideline range.

From this, we conclude that the District Court did not consider the disparities that result from fast-track programs to be legally unwarranted and, thus, did not choose to vary from the advisory Guidelines range on the basis thereof. *Booker* does not require sentencing courts to vary from the Guidelines range; rather, it merely allows the practice.[2]

---

[2]Some courts of appeals have gone so far as to hold that it is *impermissible* for a district court at sentencing to consider the nationwide disparity created by fast-track

What is more, the District Court in this case did vary downward from the advisory Guidelines range of 41–51 months of imprisonment and imposed a sentence of 36 months. This reflected the Court's reasonable conclusion that the base offense level and resulting Guidelines range overstated the seriousness of Garcia's offense and instead reflected his criminal history. Following the Guidelines, the Court reasoned, would place too much emphasis on behavior that was not the focus of this criminal prosecution. Such careful, individual consideration of a criminal sentence is a model of judging in the post-*Booker* world.

We perceive no error in the District Court's sentencing decisions, and thus affirm Garcia's 36-month sentence.

---

programs. *See United States v. Arevalo-Juarez*, 464 F.3d 1246, 1249–51 (11th Cir. 2006); *United States v. Perez-Pena*, 453 F.3d 236, 240–44 (4th Cir. 2006); *United States v. Galicia-Cardenas*, 443 F.3d 553, 555 (7th Cir. 2006). We did not decide that question in *Vargas* and do not do so today. We do note, however, that such a rule may be at odds with our decision in *United States v. Gunter*, which made clear that following the Guidelines is required only at steps one and two of the sentencing process (calculating the Guidelines sentencing range); however, sentencing courts are free to vary on any reasonable ground at step three (imposing the actual sentence). *See* 462 F.3d 237, 247–49 (3d Cir. 2006) (finding error where a sentencing court treats the Guidelines as mandatory and fails to recognize its authority ultimately to disagree with their operation and result); *see also United States v. Pickett*, No. 05-3179, ___ F.3d ___, 2007 WL 445937 (D.C. Cir. Feb. 13, 2007) (same).