[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-13476
Non-Argument Calendar
_____

D.C. Docket No. 9:13-cr-80062-WPD-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

OMAR PITTER,
a.k.a. Jermaine Ayala,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(February 14, 2014)

Before HULL, WILSON and FAY, Circuit Judges.

PER CURIAM:

Omar Damian Pitter appeals his 46-month sentence, imposed at the low end of the advisory guidelines range, after pleading guilty to one count of illegal reentry of a deported alien, in violation of 8 U.S.C. § 1326(a) and (b)(2). After review, we affirm.

## I. BACKGROUND FACTS

### A. Offense Conduct

Pitter, a citizen of Jamaica, first entered the United States in 2000, when he was 18 years' old. From November 2002 to March 2003, Pitter, under the name "Troy Williams," conspired with others to distribute between 5 and 15 kilograms of cocaine. Pitter drove quantities of cocaine from Florida to Ohio, and at the time of his arrest, he had over $30,000 in cash on his person and in his suitcase. In October 2003, Pitter was convicted of conspiracy to distribute cocaine and to possess with intent to distribute cocaine and sentenced to 96 months' imprisonment and 5 years' supervised release.

Pitter's advisory guidelines range for the drug-trafficking offense was 121 to 151 months' imprisonment. Pitter's 96-month sentence was a result of a downward departure under U.S.S.G. § 5K1.1 for his substantial assistance.

On May 6, 2010, after he served his prison sentence, Pitter was deported to Jamaica. Sometime thereafter, law enforcement discovered that Pitter had returned to the United States and was residing in Florida under the name "Jermaine Ayala."

2

In February 2013, Pitter was arrested and charged with illegal reentry of a deported alien. In May 2013, Pitter pled guilty pursuant to a written plea agreement. In the plea agreement, the government agreed not to charge Pitter for impersonating a U.S. citizen, in violation of 18 U.S.C. § 911.

Also, because Pitter was on supervised release for his 2003 drug-trafficking offense when he reentered the United States, he was separately charged with violating the terms of his supervised release. Pitter admitted that he had committed the violation.

## B.    Sentencing

The presentence investigation report ("PSI") prepared for Pitter's illegal reentry case calculated a total offense level of 21, which included: (1) a base offense level of 8, pursuant to U.S.S.G. § 2L1.2(a); (2) a 16-level increase, pursuant to § 2L1.2(b)(1)(A), because Pitter was previously deported following a drug-trafficking conviction for which his sentence exceeded 13 months; and (3) a 3-level reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), (b).

Pitter received three criminal-history points for his 2003 drug-trafficking offense and another two points because he committed the instant offense while on supervised release for the drug-trafficking offense. His five criminal history points yielded a criminal history category of III. With an adjusted offense level of 21 and

3

a criminal history category of III, the PSI suggested an advisory guidelines range of 46 to 57 months' imprisonment.[1]

In a sentencing memorandum, Pitter asked for a 24-month prison sentence because (1) he previously cooperated with the government in relation to his 2003 drug-trafficking conviction, and (2) he reentered the United States, as his codefendants had returned to Jamaica and were threatening to harm Pitter and his mother due to Pitter's prior cooperation. As further support for his request for a downward variance, Pitter asserted that his advisory guidelines range substantially overrepresented his criminal history and the likelihood that he would reoffend because the PSI used his 2003 drug-trafficking conviction, his only prior criminal offense, to increase his sentence by 16 levels and to increase his criminal history category.

Pitter also noted that the government determined that he was ineligible for the "fast-track program," which applies to defendants charged with illegal reentry, because he had a prior conviction and was on supervised release when he was arrested for the illegal reentry offense.[2] Pitter contended that the fast-track

---

[1]Under § 1326(a) the statutory maximum for illegal reentry of a deported alien is two years' imprisonment. However, because of Pitter's 2003 drug-trafficking conviction, his statutory maximum became 20 years' imprisonment under § 1326(b)(2).

[2]A defendant eligible for the "fast-track program" may receive a downward departure of not more than four levels under the Sentencing Guidelines. U.S.S.G. § 5K3.1; United States v. Campos-Diaz, 472 F.3d 1278, 1279 n.1 (11th Cir. 2006). Some districts do not have fast track programs, as they must be authorized by the U.S. Attorney General and the district's U.S.

4

program created sentencing disparities between similarly-situated defendants because the U.S. Attorney for each district had discretion as to whether a defendant was eligible for the program. Finally, Pitter requested that the district court consider several mitigating factors, including his lack of positive role models, his exemplary behavior while in prison for his 2003 drug-trafficking offense, and the fact that he was about to become a father.

At sentencing, Pitter stated he had no objections to the PSI, and the district court adopted the PSI's advisory guidelines range of 46 to 57 months' imprisonment. Pitter reiterated the arguments in his sentencing memorandum, adding, inter alia, that (1) he was culturally assimilated into the United States, even though most of his time in the country was spent in prison, and (2) he cooperated with law enforcement in the instant case and even provided information about the person who helped him obtain a fake identity.

The government asked the district court to deny Pitter's request for a downward variance because Pitter had a history of illegally entering and committing crimes: on both occasions that he entered the United States, he

---

Attorney. Campos-Diaz, 472 F.3d at 1279 & n.1. The Southern District of Florida has a fast-track program; however, under that program, the U.S. Attorney for the Southern District of Florida may deny an individual defendant's participation if the defendant is "under any form of court or correctional supervision" or if any "other aggravating factors [are] identified."

assumed a false identity, and during his first stay, he was convicted of conspiracy to distribute cocaine.

The district court stated it had considered the 18 U.S.C. § 3553(a) factors. The court found that Pitter did not leave Jamaica to protect his mother, as she was still living there.  The court further found that it was "perfectly fine" to use Pitter's prior 2003 drug-trafficking offense to increase both his offense level and his criminal history category.  The court also (1) acknowledged Pitter's argument concerning "[t]he disparity in Fast-Track programs," (2) determined that Pitter had no "right" to be in the fast-track program, (3) found that the U.S. Attorney for the Southern District of Florida had not discriminated against Pitter in finding him ineligible for the fast-track program, and (4) noted that, even if the U.S. Attorney had found Pitter eligible, the court would still not be required to reduce Pitter's sentence based on his eligibility for the fast-track program.

The district court found insufficient cultural assimilation to warrant a variance, but determined that it would consider Pitter's cooperation in the case in deciding where to sentence within the advisory guidelines range.  The court observed that Pitter had a conviction for a serious drug-trafficking offense, involving large amounts of cash, and that Pitter's below-guidelines sentence for that offense had not deterred him from committing further criminal activity

6

because he had illegally returned to the United States and assumed someone else's identity.

The district court determined that a sentence at the low end of the advisory guidelines range of 46 to 57 months was appropriate and imposed a 46-month prison sentence.  As to the supervised release violation, the district court sentenced Pitter to a four-month prison sentence to run concurrently with the sentence imposed in his illegal reentry case.  Pitter appealed the 46-month sentence imposed in the illegal reentry case.[3]

## II.  DISCUSSION

### A.    Prior Felony Drug Conviction

As Pitter concedes, the Supreme Court's decision in Almendarez-Torres forecloses any argument that the existence of a defendant's prior felony drug conviction needed to be admitted in his guilty plea or otherwise proven beyond a reasonable doubt before that conviction could be used to increase his statutory maximum sentence and advisory guidelines range, pursuant to 8 U.S.C. § 1326(b)(2) and U.S.S.G. § 2L1.2(b)(1)(A).  See Almendarez-Torres v. United States, 523 U.S. 224, 226-27, 239, 118 S. Ct. 1219, 1222, 1228 (1998) (holding that a prior conviction used to increase a defendant's statutory maximum sentence under § 1326(b)(2) is not an element of the offense and, thus, need not be alleged

---

[3]Pitter has not appealed the judgment in his supervised-release revocation case.

7

in the indictment or found by a jury beyond a reasonable doubt); United States v. Palomino Garcia, 606 F.3d 1317, 1337 (11th Cir. 2010) (holding that, under Almendarez-Torres, a prior conviction used to increase a defendant's sentence under § 2L1.2 does not need to be alleged in the indictment or proved beyond a reasonable doubt and that Almendarez-Torres "'remains the law until the Supreme Court overrules it'").

## B.    Reasonableness

We review the reasonableness of a sentence under a deferential abuse of discretion standard.  Gall v. United States, 552 U.S. 38, 41, 128 S. Ct. 586, 591 (2007).  We first determine whether the district court committed any significant procedural error[4] and then examine whether the sentence is substantively unreasonable under the totality of the circumstances.  United States v. Pugh, 515 F.3d 1179, 1190 (11th Cir. 2008).  The abuse of discretion standard "allows a range of choice for the district court, so long as that choice does not constitute a clear error of judgment."  United States v. Irey, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc) (internal quotation marks omitted).  We ordinarily expect a sentence within the advisory guidelines range to be reasonable.  United States v.

---

[4]A district court can commit procedural error by "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." United States v. Pugh, 515 F.3d 1179, 1190 (11th Cir. 2008) (internal quotation marks omitted).

8

Talley, 431 F.3d 784, 788 (11th Cir. 2005).  The party challenging the sentence bears the burden of proving the sentence is unreasonable in light of the record and the § 3553(a) factors.  Id.[5]

Pitter's only procedural argument is that the district court misinterpreted his argument "that the government's uneven application of [the fast-track] program created unwarranted sentencing disparities that the court should take into account in fashioning a reasonable sentence under § 3553(a)."

After reviewing the sentencing transcript, we conclude that the district court did not misconstrue Pitter's sentencing-disparity argument and properly declined to consider the disparities created by the fast-track program in weighing the § 3553(a) factors.  Congress contemplated that the fast-track program would create disparities between defendants because "a defendant may benefit from its application only on motion of the government, and only if the Attorney General has authorized the [fast-track program] in that district."  United States v. Arevalo-Juarez, 464 F.3d 1246, 1251 (11th Cir. 2006).  Thus, this Court has held that sentence disparities based on the uneven application of the fast-track program are

---

[5]The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims.  18 U.S.C. § 3553(a).

not "unwarranted sentencing disparities for the purposes of § 3553(a)(6)" and that it is impermissible for a district court to consider such disparities. Id. (internal quotation marks omitted). Accordingly, had the district court actually considered the disparities created by the fast-track program, as Pitter urged, the district court would have abused its discretion by considering an impermissible factor. See id.

We also conclude that Pitter's 46-month prison sentence was substantively reasonable. His 46-month sentence is at the bottom of his advisory guidelines range of 46 to 57 months, and we ordinarily expect a guidelines sentence to be reasonable. See Talley, 431 F.3d at 788. In addition, his 46-month sentence was well below the statutory maximum penalty of 20 years' imprisonment, which is a "further indicator the sentence was reasonable." United States v. McKinley, 732 F.3d 1291, 1299 (11th Cir. 2013).

In choosing where to sentence Pitter within the advisory guidelines range, the district court considered Pitter's cooperation with the government as a mitigating factor. It also acknowledged Pitter's arguments in support of a variance from his advisory guidelines range. Despite Pitter's arguments, the district court was entitled to conclude that a downward variance from the advisory guidelines range was not warranted, in light of (1) the severity of Pitter's prior felony drug

conviction, involving Pitter's use of an alias and large amounts of cocaine and cash, and (2) his use of a false identity after illegally reentering the country.[6]

Further, in sentencing Pitter, the district court was entitled to place weight on the need to deter Pitter from committing future criminal activity, as Pitter's prior below-guidelines sentence for his 2003 drug-trafficking had not deterred him from illegally reentering the United States and assuming a false identity. Under the totality of the circumstances, we cannot say that Pitter's 46-month prison sentence was an abuse of discretion.

For all the foregoing reasons, we affirm Pitter's sentence.

**AFFIRMED.**

---

[6]We note that our prior precedent forecloses any argument by Pitter that the district court engaged in improper "double counting" by using his prior drug-trafficking conviction to increase his base offense level by 16, pursuant to § 2L1.2(b)(1)(A), and to increase his criminal history category. See United States v. Adeleke, 968 F.2d 1159, 1160-61 (11th Cir. 1992) (rejecting the defendant's argument that a district court engaged in improper "double counting" when it uses a defendant's prior convictions to increase his criminal history category and offense level).

11