[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-12141

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Aug. 19, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 06-00087-CR-4-SPM-WCS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

VICTOR GONZALO VEGA-CASTILLO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(August 19, 2008)**

Before DUBINA and BARKETT, Circuit Judges and SCHLESINGER,* District
Judge.

_____
*Honorable Harvey E. Schlesinger, United States District Judge for the Middle District
of Florida, sitting by designation.

PER CURIAM:

Appellant Victor Gonzalo Vega-Castillo appeals his 70-month sentence following a plea of guilty to reentering the United States illegally after having been deported or removed, in violation of 8 U.S.C. § 1326(a)(1), (b)(2). Before the district court imposed his sentence, Vega-Castillo asked the district court to vary downward from his applicable sentencing range of 70 to 87 months imprisonment based on the fact that the district in which he was indicted on the present charge – the Northern District of Florida – did not employ an early disposition program, and this resulted in an unwarranted sentencing disparity that should be considered pursuant to 18 U.S.C. § 3553(a)(6).

On appeal, Vega-Castillo requests that this court remand his case to the district court for resentencing and order the district court "to consider the disparity caused by nationally disparate 'fast-track' sentencing when considering the factors in 18 U.S.C. § 3553(a)."[1] Vega-Castillo recognizes that we previously held in *United States v. Castro*, 455 F.3d 1249, 1253 (11th Cir. 2006), that "section 3553(a)(6) does not require the district court to depart based on the availability of

_____

[1] The Government asserts that this appeal is "moot" because Vega-Castillo's ineligibility for relief "even in a fast-track district" means that we could not afford him "meaningful relief" even if he prevails on appeal. We reject this argument. There is an active case or controversy, and "meaningful relief" is possible. *See United States v. Orrega*, 363 F.3d 1093, 1095 (11th Cir. 2004) (citing U.S. Const. art. III, § 2) (discussing that a case is moot if there is no active case or controversy); *Calderon v. Moore*, 518 U.S. 149, 150, 116 S. Ct. 2066, 2067 (1996) (noting that a case is moot where no effectual relief whatsoever is possible).

2

the [fast-track] departure in only some districts," but argues that this decision has been overruled by *Kimbrough v. United States*, 128 S. Ct. 558 (2007).[2]

As an initial matter, while Vega-Castillo's appellate brief only cites to *Castro*, the essence of his argument is that the district court should have considered fast-track disparity as part of the § 3553(a) factors in imposing his sentence. Because two cases following *Castro – United States v. Arevalo-Juarez*, 464 F.3d 1246, 1251 (11th Cir. 2006), and *United States v. Llanos-Agostadero*, 486 F.3d 1194, 1198-99 (11th Cir. 2007) – suggest that district courts are prohibited from considering this disparity in imposing sentence, we also include those cases in our review of Vega-Castillo's claim.

Under the prior precedent rule, we are bound to follow a prior binding precedent "unless and until it is overruled by this court en banc or by the Supreme Court." *United States v. Brown*, 342 F.3d 1245, 1246 (11th Cir. 2003). Here, it is undisputed that we have not overruled *Castro* or its progeny in an *en banc* decision. Thus, the only issue is whether the Supreme Court has done so.[3]

---

[2] Vega-Castillo also argues that *Castro* was overruled by *Rita v. United States*, 551 U.S. __, 127 S. Ct. 2456 (2007). This argument is meritless. *Rita* did not expressly overrule *Castro* or its progeny, and did not do so implicitly because it was factually distinguishable. *See United States v. Chubbuck*, 252 F.3d 1300, 1305 n.7 (11th Cir. 2001) (noting that the prior precedent rule would not apply if intervening on-point caselaw from the Supreme Court existed).

[3] The dissent relies on the First Circuit's opinion in *United States v. Rodriguez*, 527 F.3d 221 (1st Cir. 2008), in which the court declined to follow its prior precedent prohibiting the consideration of fast-track disparities in light of the Supreme Court's decision in *Kimbrough*. It

For the Supreme Court to overrule a case, its decision must have "actually overruled or conflicted with [this court's prior precedent]." *See United States v. Marte*, 356 F.3d 1336, 1344 (11th Cir. 2004) (citation and quotation omitted). There is a difference between the holding in a case and the reasoning that supports that holding. *Atlantic Sounding Co., Inc. v. Townsend*, 496 F.3d 1282, 1284 (11th Cir. 2007). Even if the reasoning of an intervening high court decision is at odds with a prior appellate court decision, that does not provide the appellate court with a basis for departing from its prior decision. *Id.*; *compare United States v. Ortiz-Delgado*, 451 F.3d 752, 754 n.1 (11th Cir. 2006) (applying the prior precedent rule and refusing to reconsider another panel decision), *with United States v. Smith*, 934 F.2d 270, 274-75 (11th Cir. 1991) (refusing to apply rule because prior case had been implicitly overruled by subsequent Supreme Court decisions).[4]

---

is important to note that the First Circuit employs a different prior precedent rule. Unlike this circuit, where prior precedent must be followed unless the prior precedent has been overruled by this court *en banc* or by the United States Supreme Court, the First Circuit allows a panel to depart from prior precedent "in those relatively rare instances in which authority that postdates the original decision, although not directly controlling, nevertheless offers a sound reason for believing that the former panel, in light of fresh developments, would change its collective mind." *Id.* at 225 (internal quotations and citation omitted). Thus, unlike the First Circuit, even if the reasoning of *Kimbrough* is at odds with the reasoning of our prior holdings, we must follow our prior precedents unless *Kimbrough* overruled them. Moreover, the Fifth Circuit confronted the same issue and held that "[fast-track] precedents were not called into question by *Rita* or *Kimbrough*." *United States v. Gomez-Herrera*, 523 F.3d 554, 563 (5th Cir. 2008).

[4] To highlight the narrowness of this circuit's prior precedent rule, consider *United States v. Cleckler*, 270 F.3d 1331, 1335 & n.4 (11th Cir. 2001), where we declined to ignore prior precedent because, among other reasons, the Supreme Court case involved the innocent-owner

4

Fast-track programs originated in federal district courts in the southwestern United States to deal with the large number of illegal re-entry and other immigration cases pending in those districts. *See United States v. Campos-Diaz*, 472 F.3d 1278, 1279 n.1 (11th Cir. 2006), *cert. denied*, 127 S. Ct. 2085 (2007). Congress endorsed the fast-track program in 2003 in the PROTECT Act, Pub.L. No. 108-21, 117 Stat. 650 (2003), which "instructed the United States Sentencing Commission to promulgate a policy statement authorizing a downward departure of not more than 4 levels if the Government files a motion for such departure pursuant to an early disposition program authorized by the Attorney General and the United States Attorney." *Campos-Diaz*, 472 F.3d at 1279 n.1 (internal quotation marks and citations omitted).

The Sentencing Commission, in turn, added U.S.S.G. § 5K3.1 to the Sentencing Guidelines, which provides for the downward departure authorized by the PROTECT Act. *Id.* Specifically, § 5K3.1 provides that "on a motion by the government, a district court may grant a downward departure of up to four levels pursuant to an early disposition or 'fast-track' program specifically authorized by the Attorney General and the United States Attorney in the district housing the

_____

defense in the context of 21 U.S.C. § 881(a)(6), while the panel's case involved the same defense in the context of 21 U.S.C. § 881(a)(7), even though "section 881(a)(6) parallels section 881(a)(7) and contains an identically worded innocent-owner defense."

program." *Arevalo-Juarez*, 464 F.3d at 1248.

In January 2005, the Supreme Court rendered the Sentencing Guidelines advisory in the remedial opinion of *United States v. Booker*, 543 U.S. 220, 233-34, 125 S. Ct. 738, 750-51 (2005), but did not immediately explain how an advisory system of guidelines should be applied.

We issued *Castro* on July 12, 2006. *Castro*, 455 F.3d at 1249. In *Castro*, we addressed a situation where a defendant who was prosecuted in a non-fast-track district moved for the district court to use its post-*Booker* discretion to reduce his sentence by the equivalent of the four-level departure provided for by the fast-track guideline, U.S.S.G. § 5K3.1, but the district court ultimately denied his motion. *Id.* at 1251. On appeal, we held that "section 3553(a)(6) does not require the district court to depart based on the availability of the [fast-track] departure in only some districts." *Id.* at 1253. We reasoned that "[a]ny disparity created by section 5K3.1[, the fast-track guideline,] does not fall within the scope of section 3553(a)(6). When Congress directed the Sentencing Commission to allow the [fast-track] departure for only participating districts, Congress implicitly determined that the [sentencing] disparity was warranted." *Id.* at 1252 (internal citation omitted).

Following *Castro* – and before the district court sentenced Vega-Castillo – we decided *Arevalo-Juarez*. In that case, the district court, in imposing sentence,

6

indicated that it imposed the defendant's sentence to effectively "reduc[e] the guideline range four offense levels" because "without this adjustment there will be a disparity in sentencing between this defendant and like defendants who are sentenced in border states where the Attorney General . . . has authorized early disposition or fast-track programs." *Arevalo-Juarez*, 464 F.3d at 1247-48. However, we vacated the defendant's sentence and remanded for resentencing, explaining that, in light of our holding in *Castro*, "it was impermissible to use the disparities created by U.S.S.G. § 5K3.1 as the basis for imposing a [downward variant] sentence of 30 months." *Id.* at 1251 & n.3.

In *Llanos-Agostadero*, decided after Vega-Castillo's sentencing hearing, we reiterated that "a [sentencing] court may not consider sentencing disparities associated with early disposition programs in imposing sentence," and cited *Arevalo-Juarez* for this proposition. *Llanos-Agostadero*, 486 F.3d at 1199. We also observed that we could not "say that the sentences received by defendants in districts without fast-track programs are 'greater than necessary' to achieve the purposes of § 3553(a)(2) *solely because* similarly-situated defendants in districts *with* fast-track programs are eligible to receive lesser sentences." *Id.*

Following the parties submission of briefs, the Supreme Court concluded, in *Kimbrough v. United States*, 128 S. Ct. 558 (2007), that, because the Sentencing

7

Guidelines are advisory, including the crack/powder cocaine disparity provisions, district courts have the ability under 18 U.S.C. § 3553(a)(6) to consider that disparity in imposing sentences. *See Kimbrough*, 128 S. Ct. at 565-66, 573-76. Moreover, as Vega-Castillo notes on appeal, the Government conceded before the Supreme Court that "[a] district court may therefore sentence based on policy considerations that differ from those reflected in the Guidelines (subject to reasonableness review on appeal)." *See Kimbrough*, 2007 WL 2461473 (No. 06-6330), Brief for the United States, at 29.

We agree with the Government that *Kimbrough* did not overrule *Castro* or its progeny, and so we are bound to apply the prior precedent rule in this appeal. Specifically, *Kimbrough* never discussed *Castro* or the cases following it, or otherwise commented on non-crack cocaine disparities, and so *Kimbrough* did not expressly overrule *Castro* or its progeny. Moreover, as in *Cleckler*, the holdings of *Kimbrough* and *Castro* are distinguishable. *Kimbrough* dealt with the court's ability, post-*Booker*, to take into consideration the disparity caused by the crack/powder cocaine guideline, U.S.S.G. § 2D1.1, in imposing sentence, while *Castro* and its progeny dealt with the court's ability to take into account a sentencing disparity resulting from an entirely different guideline involving fast-track programs, U.S.S.G. § 5K3.1. Thus, the most that can be said of Vega-

8

Castillo's argument is that it pits "reasoning against holding," but not "holding against holding." *See Atlantic Sounding Co., Inc.*, 496 F.3d at 1287 (Carnes, J., concurring).

Finally, we note that "*Kimbrough* addressed only a district court's discretion to vary from the Guidelines based on a disagreement with *Guideline*, not Congressional, policy." *Gomez-Herrera*, 523 F.3d at 563; *see Kimbrough*, 128 S.Ct. at 571 (noting that Congress "mandate[d] only maximum and minimum sentences" and "sai[d] nothing about the appropriate sentences within these brackets"). Moreover, *Kimbrough* dealt only with certain Guidelines—those that, like the crack cocaine Guidelines, "do not exemplify the Commission's exercise of its characteristic institutional role." 128 S. Ct. at 575. Thus, the most that could possibly be argued is that *Kimbrough* overruled the following: prior precedents holding that a district court cannot vary from the advisory Guidelines based on a disagreement with a Guideline, even where Sentencing Commission policy judgment, not Congressional direction, underlies the Guideline at issue, and even where that policy judgment did not arise from the Commission's exercise of its characteristic institutional role. *Castro*, *Arevalo-Juarez*, and *Llanos-Agostadero* do not fall within that narrow field. We conclude that *Kimbrough* did not overrule them. *See Castro*, 455 F.3d at 1252 ("Congress directed the Sentencing

9

Commission to allow the departure for only participating districts. . . ." (citing

PROTECT Act, Pub.L. No. 108-21 § 401(m)(2)(B), 117 Stat. 650, 675 (2003)).

Thus, we affirm Vega-Castillo's 70-month sentence.

**AFFIRMED.**

BARKETT, Circuit Judge, Dissenting:

I respectfully dissent from the majority's opinion because I believe the Supreme Court's decision in Kimbrough leaves no room for upholding our prior precedents in Castro, Arevalo-Juarez, and Llanos-Agostadero. Under our precedent, when an intervening Supreme Court decision has "undermined [a prior panel decision] to the point of abrogation," we must apply the Supreme Court's decision. United States v. Archer, No. 07-11488, 2008 U.S. App. LEXIS 13462, at *11–12 (11th Cir. June 26, 2008).[1]

I believe it to be beyond peradventure that Kimbrough has completely undermined the rationale of our prior cases holding that sentencing courts cannot consider "fast-track" sentencing disparities as the basis for a Guidelines variance. As the Assistant U.S. Attorney, to her credit, conceded, "[t]he holdings in Llanos-Agostadero and Arevalo-Juarez appear to be at odds with Kimbrough." Letter from Terry Flynn, Assistant U.S. Attorney, to the Court, after oral argument (May 22, 2008) (internal citations omitted).

The rationale underlying and supporting the holdings of Castro, Arevalo-

---

[1] In Archer, this court found that a Supreme Court case, Begay v. United States, 128 S. Ct. 1581 (2008), dealing with the question of whether drunk driving is a "violent felony" under the Armed Career Criminal Act, had undermined a prior panel decision to the point of abrogation even though it dealt with a different crime (unlawfully carrying a concealed weapon) and a different statutory definition ("crime of violence" under the Sentencing Guidelines).

11

Juarez, and Llanos-Agostadero was that by authorizing "fast-track" programs in some districts but not in others, Congress implicitly intended the sentencing disparities that might arise between "fast-track" districts and non-"fast-track" districts. Similarly, in Kimbrough, the government argued that by passing the Anti-Drug Abuse Act of 1986,[2] Congress "implicitly" prohibited trial judges from deviating from a Guidelines sentence based upon the Guidelines' 100-to-1 ratio. Kimbrough v. United States, 128 S. Ct. 558, 571, 572–73 (2007) (emphasis added); see also United States v. Eura, 440 F.3d 625 (4th Cir. 2006) (holding that a sentence outside the Guidelines range was per se unreasonable when based on a disagreement with the sentencing disparity for crack and powder cocaine offenses); United States v. Kimbrough, 174 F. App'x 798 (4th Cir. 2006) (same).[3] The Supreme Court flatly rejected that position, expressly stating that it "decline[d] to read any implicit directive into . . . congressional silence." Kimbrough, 128 S. Ct. at 571 (emphasis added).

The Supreme Court concluded that a judge is permitted to "consider the

---

[2] In determining the offense levels for crack and powder cocaine, the Sentencing Commission adopted the 100-to-1 ratio in line with the Anti-Drug Abuse Act of 1986.

[3] This court in United States v. Williams, 456 F.3d 1353, 1364–69 (11th Cir. 2006), likewise had held that courts have no authority to deviate from the 100-to-1 crack/powder cocaine ratio. But see United States v. Williams, 472 F.3d 835, 848–49 (11th Cir. 2006) (denial of rehearing en banc) (Barkett, J., dissenting) (stating that a sentencing court may deviate from the 100-to-1 ratio if it properly calculates the Guidelines range and sentences a defendant based on the individual facts and circumstances of the case).

12

disparity between the Guidelines' treatment of crack and powder cocaine offenses"
in imposing a sentence. Id. at 564. The Court held that "under Booker, the cocaine
Guidelines, like all other Guidelines, are advisory only, and that the Court of
Appeals erred in holding the crack/powder disparity effectively mandatory.
Although a district judge must include the Guidelines range in the array of factors
warranting consideration, the judge may also determine that, in that particular case,
a within-Guidelines sentence is 'greater than necessary' to serve the objectives of
sentencing." Id.

Speaking even more broadly, and quoting the government's own
concessionary position on the issue, the Court noted that "as a general matter,
courts may vary [from Guidelines ranges] based solely on policy considerations,
including disagreements with the Guidelines." Id. at 570 (internal quotation marks
omitted). Thus, the Court made consideration of the § 3553(a) factors paramount,
including a determination that in a particular case, a within-Guidelines sentence
may be "greater than necessary" to serve the objectives of sentencing.

The Guidelines are now simply the "starting point" and "initial benchmark"
for a sentencing court, Gall v. United States, 128 S. Ct. 586, 596 (2007), and after
considering them, a court "should then consider all the § 3553(a) factors" in
making an "individualized assessment based on the facts presented." Id. at

13

596–97. As the Court added, the § 3553(a) factors require consideration of "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," which may result in a sentence that varies from the Guidelines range. Kimbrough, 128 S. Ct. at 570 (internal quotation marks omitted). In directing district courts to consider the need to avoid unwarranted disparities when imposing sentences, the Court specifically noted that § 3553(a)(6) requires that district courts take account of sentencing practices in other courts. Id. at 574 (emphasis added). The Court further noted that a district court may consider arguments that "the Guidelines sentence itself fails properly to reflect § 3553(a) considerations." Id. at 570 (citing and quoting Rita v. United States, 127 S. Ct. 2456, 2465 (2007)).

I agree with the First Circuit, in which a panel recently held that Kimbrough overruled its prior precedent which was identical to Castro, Arevalo-Juarez, and Llanos-Agostadero.[4] The First Circuit found that after Kimbrough, "consideration

---

[4] I respectfully disagree with a panel of the Fifth Circuit which held that Kimbrough did not overrule its prior holdings that a district court may not vary from the Guidelines based on sentencing disparities caused by "fast-track" programs. See United States v. Gomez-Herrera, 523 F.3d 554 (5th Cir. 2008). The Fifth Circuit reasoned that because Congress authorized "fast-track" programs without revising § 3553(a)(6), any sentencing disparities resulting from "fast-track" programs are "necessarily" warranted. See id. at 562–63 (citing and quoting United States v. Marcial-Santiago, 447 F.3d 715, 718 (9th Cir. 2006)). In light of the Supreme Court's pronouncement that it refused to read any "implicit directive . . . into congressional silence," Kimbrough, 128 S. Ct. at 571, I cannot read into the PROTECT Act an implicit directive that restricts a sentencing court's discretion to deviate from the Guidelines based on "fast-track" disparities. Just as the Court in Kimbrough stated that congressional intent could not be inferred

14

of fast-track disparity is not categorically barred as a sentence-evaluating datum within the overall ambit of 18 U.S.C. § 3553(a)." United States v. Rodriguez, 527 F.3d 221, 229 (1st Cir. 2008). The court reasoned that "Kimbrough makes manifest that sentencing courts possess sufficient discretion under section 3553(a) to consider requests for variant sentences premised on disagreements with the manner in which the sentencing guidelines operate." Id. at 231.[5] The First Circuit is correct that Kimbrough completely eviscerates any prior panel decision that holds that a sentencing court categorically cannot consider "fast-track" sentencing disparities as a basis for a variance from a Guidelines sentence.

---

from the mandatory maximum-minimum sentences in the Anti-Drug Abuse Act of 1986 or Congress' inaction in the face of the Sentencing Commission's recommendations to change the 100-to-1 ratio, sentencing courts should not infer from the PROTECT Act that they can never deviate from the Guidelines based on "fast-track" disparities. "Drawing meaning from silence is particularly inappropriate . . . for Congress has shown that it knows how to direct sentencing practices in express terms." Id. Congress' authorization of "fast-track" programs does not equate to a congressional decision that district courts have no discretion to deviate from the Guidelines based on "fast-track" disparities so long as the sentence is within the maximum-minimum limits and the sentencing court has considered the § 3553(a) factors.

[5] The majority's discussion of the First Circuit's prior precedent rule is misleading and fails to give a proper reading to the First Circuit's decision in Rodriguez. (See Maj. Op. at 3 n.3.) The court in Rodriguez never said it was overruling its prior precedent only on the basis of the "sound reason[ing]" from "authority that postdates the original decision"—i.e., Kimbrough. Rather, after setting forth the two exceptions to the prior precedent rule ((1) "a previous panel is contradicted by controlling authority" and (2) a subsequent decision, while not directly controlling, nevertheless offers a sound reason for overruling the prior panel), the court explicitly states that "[t]he situation here possesses elements of both of these exceptions." See Rodriguez, 527 F.3d at 224–25. The First Circuit's decision to overrule its prior precedent was not based solely on the second exception as stated by the majority in footnote 3. Furthermore, as is evident from this circuit's recent decision in Archer, our prior precedent rule is not very different from the First Circuit's rule.

15

When it is necessary to give "full effect" to an intervening Supreme Court decision, a panel of this court may decline to follow a decision of a prior panel. Lufkin v. McCallum, 956 F.2d 1104, 1107 (11th Cir. 1992). I believe the majority has failed to give any effect to the Supreme Court's decision in Kimbrough, and thus, I must dissent and urge this court to rehear this case en banc to reconsider our prior precedents in light of Kimbrough.