[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-15682
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 19, 2010
JOHN LEY
CLERK

D. C. Docket No. 09-00079-CR-3-RV

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

VICENTE GOMEZ-CARRILLO,
a.k.a. Jose Angel Marrufo,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(May 19, 2010)

Before CARNES, MARTIN and FAY, Circuit Judges.

PER CURIAM:

Vicente Gomez-Carrillo appeals from his 90-month sentence, which was imposed for unlawfully entering the United States after having previously been removed from the United States, in violation of 8 U.S.C. § 1326. On appeal, Gomez-Carrillo argues that the district court erred in finding that it lacked authority to grant a downward variance under 18 U.S.C. § 3553(a) based on the disparity that results from the fact that only some judicial districts use fast-track programs, under which certain defendants may receive a downward departure under the Sentencing Guidelines if they satisfy certain criteria. Although Gomez-Carrillo acknowledges that this argument is foreclosed by our decision in *United States v. Vega-Castillo*, 540 F.3d 1235 (11th Cir.), *cert denied*, 129 S.Ct. 2825 (2009), he urges us to reconsider whether *Vega-Castillo*'s holding is consistent with the Supreme Court's decision in *Kimbrough v. United States*, 552 U.S. 85, 128 S.Ct. 558, 159 L.Ed.2d 481 (2007). In addition, Gomez-Carrillo argues that, had the district court properly understood the scope of fast-track programs, it would not have found that, even if Gomez-Carrillo were sentenced in a fast-track district, his criminal history would prevent him from receiving a downward departure under a fast-track program.

For the reasons set forth below, we affirm.

## I.

A federal grand jury indicted Gomez-Carrillo, charging him with unlawfully entering the United States after having previously been removed from the United States. Gomez-Carrillo ultimately pled guilty to the offense.

In preparing the presentence investigation report ("PSI"), the probation officer found that, pursuant to U.S.S.G. § 2L1.2(b)(A)(ii), Gomez-Carrillo's base offense level should be increased by 16 levels because he unlawfully remained in the country after sustaining a conviction for a crime of violence. The officer noted that this increase was based on Gomez-Carrillo's 1994 state-court conviction for assault with a firearm. In reviewing Gomez-Carrillo's criminal history, the probation officer reported that, according to an information summary filed in the state court concerning the 1994 conviction, Gomez-Carrillo and three codefendants had attempted to commit murder, and Gomez-Carrillo used a shotgun during the commission of this felony. Based on this conduct, he pled guilty to assault with a firearm. At the time of his arrest for this offense, Gomez-Carrillo provided a statement to officials, in which he explained that the incident arose out of rival gang activity.

In addition to this offense, the probation officer reported that Gomez-Carrillo had sustained three convictions for driving under the influence, one conviction for possession of marijuana, one conviction for possession of drug

3

paraphernalia, several convictions for negotiating worthless checks, one conviction for felony battery, and one conviction for assault. The officer noted that Gomez-Carrillo had been charged with felony battery after he grabbed his girlfriend around the throat and attempted to choke her. The officer determined that Gomez-Carrillo's criminal history category, together with his offense level, produced a guideline range of 77 to 96 months' imprisonment.

Gomez-Carrillo filed a sentencing memorandum, in which he requested that the court grant a downward variance of approximately four offense levels because the court's district did not use a fast-track program. He pointed out that some districts employ a fast-track program, and asserted that, if the court did not grant a downward variance on this basis, there would be an unwarranted sentencing disparity between himself and similarly situated defendants who were sentenced in judicial districts that used fast-track programs. In support of this argument, Gomez-Carrillo relied on the Third Circuit's decision in *United States v. Arrelucea-Zamudio*, 581 F.3d 142 (3d Cir. 2009).

At sentencing, the court noted that some judicial districts near the United States-Mexico border use fast-track programs to handle the large caseload that arises out of the unique locations of their jurisdictions. The court further noted that, under a fast-track program, a defendant would receive a downward departure

in exchange for agreeing to an expedited processing of his criminal case.  The court found, however, that this Court's binding decision in *Vega-Castillo* prohibited it from granting a downward variance based on the fact that the district did not have a fast-track program.  In addition, the court stated that, even if such a program were available in its district, Gomez-Carrillo's "extensive" criminal history would likely prevent him from qualifying for benefits under a fast-track program.

The court sentenced Gomez-Carrillo to a term of 90 months' imprisonment, which was within the applicable guideline range.  After the court imposed sentence, Gomez-Carrillo objected that the fact that he received a 16-level increase to his offense level based on his 1994 assault conviction would not preclude him from qualifying for participation in a fast-track program.  The court stated that it was within a district court's discretion to determine whether a defendant was eligible for a downward departure under a fast-track program, and found that, even if such a program were available in its district, Gomez-Carrillo's criminal history would preclude him from taking advantage of the program.  Specifically, the court stated that, "It would be my determination that Mr. Gomez-Carrillo should not be under the [f]ast-[t]rack criteria because of any number of aggravating circumstances that apply to his situation, not the least of which is the return after a

5

very serious offense in California, and then his ongoing [criminal] pattern."

**II.**

We review *de novo* the district court's application and interpretation of the sentencing guidelines. *United States v. Wilks*, 464 F.3d 1240, 1242 (11th Cir. 2006). Under our prior precedent rule, we are bound to follow a prior binding precedent, "unless and until it is overruled by this court en banc or by the Supreme Court." *United States v. Brown*, 342 F.3d 1245, 1246 (11th Cir. 2003).

"A non-constitutional error is harmless if, viewing the proceedings in their entirety, a court determines that the error did not affect the sentence, or had but very slight effect." *United States v. Mathenia*, 409 F.3d 1289, 1292 (11th Cir. 2005) (quotation omitted). In other words, "If one can say with fair assurance that the sentence was not substantially swayed by the error, the sentence is due to be affirmed even though there was error." *Id.* (quotation and alterations omitted).

Regarding fast-track programs, we have explained that:

> The fast-track departure is available to defendants who agree to the factual basis of the criminal charge and waive the rights to file pretrial motions, to appeal, and to seek collateral relief (except for ineffective assistance of counsel), but only in judicial districts that participate in a early disposition program authorized by the Attorney General of the United States and the United States Attorney for the district in which the court resides.

*United States v. Castro*, 455 F.3d 1249, 1251 (11th Cir. 2006) (quotations,

6

citations, and alteration omitted); *see also* U.S.S.G. § 5K3.1. Congress endorsed fast-track programs in order to assist judicial districts along the southwestern United States-Mexico border in handling the large number of immigration-related cases filed in those districts. *Vega-Castillo*, 540 F.3d at 1237. In addition, Congress directed the Sentencing Commission to promulgate a policy statement authorizing a downward departure of no more than four offense levels if the government files a motion for such a departure under a fast-track program. *Id.* In U.S.S.G. § 5K3.1, the Sentencing Commission set forth its policy statement regarding fast-track departures, providing that a "court may depart downward not more than 4 levels pursuant to an early disposition program." *See* U.S.S.G. § 5K3.1.

Our precedent has made clear that a district court may not grant a variance based on the fact that its judicial district does not use a fast-track program. *See United States v. Llanos-Agostadero*, 486 F.3d 1194, 1199 (11th Cir. 2007) (holding that "a sentencing court may *not* consider fast-track disparities when imposing sentence"); *United States v. Arevalo-Juarez*, 464 F.3d 1246, 1251 (11th Cir. 2006) (same). In *Vega-Castillo*, we rejected the defendant's argument that the Supreme Court's decision in *Kimbrough* effectively overruled this precedent. *Vega-Castillo*, 540 F.3d at 1238-39.

Here, while Gomez-Carrillo relies on the Third Circuit's decision in *Arrelucea-Zamudio*, this decision is not an *en banc* decision by this Court, nor is it a Supreme Court decision. Accordingly, the district court correctly found that *Vega-Castillo* constitutes binding precedent that precluded it from varying downward based on a fast-track disparity.

Moreover, even assuming *arguendo* that the court had erred in finding that it lacked authority to vary downward based on a fast-track disparity, any such error would be harmless. When the district court denied Gomez-Carrillo's request for a fast-track variance, it found not only that our decision in *Vega-Castillo* prohibited such a variance, but also that Gomez-Carrillo's criminal history would likely prevent him from receiving a downward departure under a fast-track program. While Gomez-Carrillo argues that, had the court understood the proper scope of fast-track programs, it may not have found that his criminal history militated against a downward variance, this argument lacks merit. The court found that, in fast-track districts, a district court has authority to determine whether a defendant should receive a downward departure under a fast-track program. When Gomez-Carrillo pointed out to the court that defendants with previous felony convictions had received downward departures under fast-track programs, the court responded that "any number of aggravating circumstances" demonstrated that, even if

8

Gomez-Carrillo were in a fast-track district, he would not receive a downward departure. As a result, the court made clear that it found that it is left to a district court to determine whether a particular defendant would satisfy fast-track criteria. It also made clear that, regardless of whether some defendants with previous felony convictions had received downward departures under a fast-track program, it would find that Gomez-Carrillo's criminal history precluded such relief. For these reasons, the record demonstrates that, even if the court had believed that it possessed authority to grant a downward variance based on a fast-track disparity, it would not have granted such a variance, because it found that Gomez-Carrillo would not meet the criteria to receive a downward departure under a fast-track program. Accordingly, it can be said "with fair assurance" that any error the court may have made concerning its authority to grant a fast-track variance did not affect Gomez-Carrillo's sentence.

**AFFIRMED.**