[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-12818
Non-Argument Calendar

_____

D.C. Docket No. 1:17-cr-00017-WS-MU-2

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

TEOFILO RUIZ-MURILLO,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(June 1, 2018)

Before MARCUS, JILL PRYOR and FAY, Circuit Judges.

PER CURIAM:

Teofilo Ruiz-Murillo appeals his conviction for one count of conspiracy to distribute and possess with intent to distribute one kilogram or more of cocaine on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a) and 70506(b) under the Maritime Drug Law Enforcement Act (the "MDLEA"). Without holding a hearing, the district court denied Ruiz-Murillo's motion to dismiss the indictment, finding that there was subject matter jurisdiction under the MDLEA and that venue was proper in the Southern District of Alabama. The district court did not err in denying the motion to dismiss; thus, we affirm.

## I. BACKGROUND

The United States Coast Guard spotted a flagless go-fast vessel operated by three persons at night in international waters west of Panama. Traveling on a course consistent with drug smuggling and without navigation lights, the vessel made erratic course and speed changes as the Coast Guard approached. The Coast Guard observed crewmembers aboard the vessel jettisoning objects into the sea, including a kilo-sized package that later tested positive for cocaine.

Coast Guard officers boarded the vessel. Crewmember Ericirilo Murillo-Ruiz stated that he was the vessel's master and that it was a Colombian flagged vessel. All three crewmembers claimed Colombian nationality. During

2

questioning by the Coast Guard, one of the crew admitted that there were illegal narcotics aboard the boat.

Because Murillo-Ruiz claimed that the vessel was Colombian, the Coast Guard promptly requested that the Republic of Colombia verify the crewmembers' claim of the vessel's nationality. Colombia responded that it could neither confirm nor deny the vessel's registry in Colombia. The Coast Guard officials then continued to search the vessel and surrounding area. The Coast Guard located the package that the crewmembers had thrown off the vessel, which tested presumptively positive for cocaine. The Coast Guard then transported the crewmembers to Guantanamo Bay, Cuba. From there, they were taken to Mobile, Alabama.

Ruiz-Murillo and the other two crewmembers were charged by criminal complaint in the Southern District of Alabama for manufacturing, distributing, or possessing with intent to distribute a controlled substance on board a vessel subject to the jurisdiction of the United States. At a preliminary hearing before a magistrate judge, Ruiz-Murillo argued that the MDLEA was inapplicable, meaning the court lacked subject matter jurisdiction, because the vessel was not stateless and because the stop occurred in territorial waters, not the high seas. To prove jurisdiction, the government introduced a U.S. Department of State certification (the "Certification"). The Certification recounted that U.S. authorities contacted

3

the Colombian government to confirm the boat's claimed nationality, and Colombian authorities responded that they could neither confirm nor deny the boat's registry or nationality. The Certification also stated that the Coast Guard detected the vessel in international waters at the approximate location of 06-29N, 078-16W, "seaward of the territorial sea of any State." Further, a Department of Homeland Security agent testified at the preliminary hearing that the stop occurred in international waters. The magistrate judge concluded that there was federal jurisdiction.

A grand jury then indicted Ruiz-Murillo and the other crew members for manufacturing, distributing, or possessing with intent to distribute a controlled substance on board a vessel subject to the jurisdiction of the United States. Ruiz-Murillo moved to dismiss the indictment arguing that (1) the United States lacked subject matter jurisdiction because the vessel was not stateless and the stop did not occur in international waters; (2) the MDLEA was unconstitutional because it did not require proof of a nexus between the United States and Ruiz-Murillo; and (3) the Southern District of Alabama was not the appropriate venue.

The United States opposed the motion to dismiss. First, the government argued that there was jurisdiction because it had conclusively proven through the Certification that the vessel was stateless and that the stop occurred in international waters. Second, the government explained that Ruiz-Murillo's argument that the

4

MDLEA was unconstitutional was foreclosed by precedent.  Third, the government argued that venue existed in the Southern District of Alabama because Ruiz-Murillo entered the United States in Mobile, which is located in the Southern District of Alabama.

The district court denied, without a hearing, Ruiz-Murillo's motion to dismiss.  Regarding the motion to dismiss, the district court found that there was jurisdiction because the vessel was stateless.  Ruiz-Murillo never refuted or contradicted the government's evidence establishing jurisdiction—that is, that the vessel's master claimed Colombian registry and that Colombia could neither confirm nor deny the master's claim.  Moreover, the court found that that the vessel was in international waters at all relevant times, another finding Ruiz-Murillo offered no evidence to refute.  The district court also concluded that the MDLEA as applied was constitutional and that venue was proper in the Southern District of Alabama.

Ruiz-Murillo pled guilty, reserving the right in his written plea agreement to appeal any issues raised in his pretrial motions, including jurisdiction and venue. This is his appeal.

## II.  STANDARD OF REVIEW

This Court reviews questions of constitutional law and statutory subject matter jurisdiction *de novo*.  *United States v. Whatley*, 719 F.3d 1206, 1213 (11th

Cir. 2013); *United States v. McPhee*, 336 F.3d 1269, 1271 (11th Cir. 2003).  We review a district court's denial of an evidentiary hearing for an abuse of discretion. *United States v. Barsoum*, 763 F.3d 1321, 1328 (11th Cir. 2014).  We review *de novo* a district court's denial of a motion to dismiss an indictment for improper venue.  *United States v. Muench*, 153 F.3d 1298, 1300 (11th Cir. 1998).

An appellant abandons an argument by failing to raise the issue plainly and prominently on appeal.  *United States v. Jernigan*, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003).  Additionally, we disregard as harmless any error that does not affect a defendant's substantial rights.  Fed. R. Crim. P. 52(a).

## III.  DISCUSSION

On appeal, Ruiz-Murillo argues that the district court erred in determining that (1) it had subject matter jurisdiction; (2) the MDLEA was constitutional; and (3) venue was proper.  We disagree, for the reasons expressed below.

### A.    The District Court Did Not Err in Concluding That It Had Subject Matter Jurisdiction.

The Constitution empowers Congress "[t]o define and punish Piracies and Felonies committed on the high Seas, and Offences against the Law of Nations." U.S. Const. art. I, § 8, cl. 10.  Pursuant to this power, Congress enacted the MDLEA to prohibit any person from "knowingly or intentionally . . . possess[ing] with intent to manufacture or distribute, a controlled substance [on board] . . . a

6

vessel subject to the jurisdiction of the United States."  46 U.S.C. § 70503(a), (e).

The statute specifies that a vessel without nationality is subject to the jurisdiction

of the United States.  *Id.* § 70502(c)(1)(A).  A vessel without nationality, in turn,

includes "a vessel aboard which the master or individual in charge makes a claim

of registry and for which the claimed nation of registry does not affirmatively and

unequivocally assert that the vessel is of its nationality."  *Id.* § 70502(d)(1)(C).

The claimed nation's response "is proved *conclusively* by certification of the

Secretary of State or the Secretary's designee."  *Id.* § 70502(d)(2) (emphasis

added).  Ruiz-Murillo argues that the district court erred in concluding that it had

jurisdiction under the MDLEA because of disputes about whether the vessel was

stateless and whether the stop occurred in international waters.

Ruiz-Murillo first argues that the district court improperly concluded that the

vessel was stateless.  Establishing jurisdiction over a vessel, he argues, requires

"some amalgam of proof."  Here, the vessel's master claimed Colombian registry.

Colombia responded, however, that it could neither confirm nor deny the vessel's

Colombian registry.  The Certification signed by a designee of the Secretary of

State reflects these facts.  Ruiz-Murillo relies on *United States v. Hernandez*, 864

F.3d 1292 (11th Cir. 2017), to argue that the Certification requires a "deliberative

process" when challenged.  But *Hernandez* does not support this proposition and

instead reinforces that "'the response of a foreign nation to a claim of

registry . . . is proved conclusively by certification of the Secretary of State or the Secretary's designee.'" *Hernandez*, 864 F.3d at 1299 (quoting 46 U.S.C. § 70502(d)(2)).

Ruiz-Murillo next argues that the district court should have granted him an evidentiary hearing on the jurisdictional issue because "the boat's location and the chronology of events was a mystery." He argues that he was entitled to a hearing to show that the vessel was not stopped in international waters. He cites *United States v. Bellaizac-Hurtado*, 700 F.3d 1245 (11th Cir. 2012), for the proposition that Congress cannot enforce United States drug trafficking laws in the territorial waters of another nation. It is true that in *Bellaizac-Hurtado* we held that Congress lacked authority under the Constitution's Offences Clause to proscribe drug trafficking conduct that occurred in another country's territorial waters. *Id.* at 1258. But here the district court found that the vessel operated "in international waters at all relevant times" because all listed sets of coordinates—taken from the Certification and other Coast Guard documents—"define locations that are far more than 12 miles beyond the Coast of Colombia and therefore lie in international waters, as a matter of law."[1] In determining the vessel's location, the district court relied on the Certification, Coast Guard incident notes, the Coast Guard "Action

---

[1] Ruiz-Murillo also argues that a search in territorial waters would violate the *United Nations Convention against Illicit Traffic in Narcotic Drugs and Psychotropic Substances*. We reject this argument because (1) the undisputed record shows that the vessel was in international waters at all times and (2) the MDLEA explicitly precludes a defendant from arguing failure to comply with international law as a defense. *See* 46 U.S.C. § 70505.

8

Request" form, and a Homeland Security agent's testimony. Ruiz-Murillo does not dispute the accuracy of the coordinates and has come forward with no evidence to refute that these coordinates are in international waters. We have held that the law does not compel a district court to hold an evidentiary hearing where a defendant's motion fails to allege facts that if proven would require the grant of relief. *See United States v. Sneed*, 732 F.2d 886, 888 (11th Cir. 1984). Thus, the district court did not err in refusing to hold an evidentiary hearing.

In a closely related argument, Ruiz-Murillo contends that his due process rights were violated because the magistrate judge improperly heard case-dispositive issues. Federal Rule of Criminal Procedure 59 limits the issues that a magistrate judge may decide to nondispositive matters and certain dispositive matters upon referral from the district court judge. Fed. R. Crim. P. 59. The Federal Magistrates Act, however, specifically authorizes district court judges to designate a magistrate judge to hear and determine various pretrial matters. 28 U.S.C. § 636(b)(1)(A). The Supreme Court has confirmed the constitutionality of this practice. *See United States v. Raddatz*, 447 U.S. 667, 683 (1980) (holding that a trial judge's adoption of a magistrate judge's findings related to a suppression hearing does not violate due process "so long as the ultimate decision is made by the district court").

9

Even assuming that the magistrate judge erred by ruling on the jurisdictional issue, any error was harmless. Ruiz-Murillo filed a formal motion to dismiss based on lack of subject matter jurisdiction that the district court decided. Although the district court relied on the undisputed evidence introduced at the hearing, the district court adopted no portion of the magistrate judge's factual findings. Accordingly, any error resulting from the magistrate's jurisdictional determination was harmless.

**B.     The District Court Did Not Err in Determining that the MDLEA Was Constitutional.**

Ruiz-Murillo argues that his conviction should be vacated because the MDLEA is unconstitutional for not requiring a nexus between a defendant and the United States. Under the prior panel precedent rule, this Court is bound to follow a prior decision unless and until it is overruled by this Court sitting *en banc* or by the Supreme Court. *United States v. Vega-Castillo*, 540 F.3d 1235, 1236 (11th Cir. 2008). We have previously held that "the conduct proscribed by the [MDLEA] need not have a nexus to the United States because universal and protective principles support its extraterritorial reach." *United States v. Campbell*, 743 F.3d 802, 810 (11th Cir. 2014). Subsequent cases reaffirm our holding that the MDLEA does not require a nexus to the United States. *See United States v. Wilchcombe*, 838 F.3d 1179, 1186 (11th Cir. 2016), *cert. denied*, 137 S. Ct. 2265 (2017); *United*

10

*States v. Cruickshank*, 837 F.3d 1182, 1187–88 (11th Cir. 2016), *cert. denied*, 137 S. Ct. 1435 (2017).

Ruiz-Murillo invokes *Bellaizac-Hurtado* in urging this Court to reconsider the constitutionality of the MDLEA.  In *Bellaizac-Hurtado*, we held that Article I of the Constitution curtails the MDLEA's reach for conduct occurring in territorial seas.  *See* 700 F.3d at 1249–58.  In that case, the Coast Guard pursued the defendants in Panamanian waters.  *Id.* at 1247.  The United States relied on the Offences Clause to justify its authority to prohibit the defendants' drug trafficking in territorial seas.  *Id.* at 1248–49.  Although we held in *Bellaizac-Hurtado* that the enforcement of drug trafficking laws in territorial waters falls outside Congress's power under the Offences Clause, this case stems from Congress's authority under the Felonies Clause, which permits the government to prosecute crimes occurring on the high seas—that is, outside of territorial waters.  *See id.* at 1257 ("[W]e have always upheld extraterritorial convictions under our drug trafficking laws as an exercise of power under the Felonies Clause.").  Here, the United States presented undisputed evidence that Ruiz-Murillo committed the instant offense in international waters, making *Bellaizac-Hurtado* inapplicable.  We must reject Ruiz-Murillo's argument because our prior precedent forecloses it.

11

**C.    The District Court Did Not Err in Finding Venue Proper in the Southern District of Alabama.**

The MDLEA specifies that venue is proper in the district court of the United States for the district in which a defendant enters the United States.  46 U.S.C. § 70504(b)(1) (2017).[2]  Ruiz-Murillo argues that the district court erred in denying his motion to dismiss for improper venue because the United States failed to present evidence sufficient to establish venue in Mobile, Alabama.  The argument fails because an indictment is not subject to a pretrial motion to dismiss on the ground of insufficient venue.  *See United States v. Snipes*, 611 F.3d 855, 866 (11th Cir. 2010) (holding that venue determination in a pretrial evidentiary hearing would be improper because a jury must decide whether venue exists).

Ruiz-Murillo points out that the government incorrectly asserted that hearing testimony established his transport to Guantanamo Bay and then to the Southern District of Alabama.  However, the district court did not rely upon the government's misrepresentation that prior testimony had established venue; instead, it relied upon the government's proffer in the indictment that venue was proper in the Southern District of Alabama.  If a grand jury returns a facially valid indictment containing a proper statement of venue, pretrial determination of venue

---

[2] During this appeal's pendency, Congress amended 46 U.S.C. § 70504(b) to expand venue to all districts if the offense was begun or committed on the high seas.  Because Ruiz-Murillo's venue objection fails even under the previous, narrower venue standard, we need not examine whether the amendments apply retroactively.

12

on the merits is improper because the issue is reserved for a jury's determination. *See id.* at 866–67 ("To permit preliminary trials on essential facts, post-indictment, would 'run counter to the whole history of the grand jury institution, . . . [and] would result in interminable delay but add nothing to the assurance of a fair trial.'" (quoting *Costello v. United States*, 350 U.S. 359, 363–64 (1956))).[3]

## IV. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

**AFFIRMED.**

---

[3] Ruiz-Murillo also filed a separate motion to suppress, contending that the Coast Guard lacked reasonable suspicion to board the vessel. In support of this motion, he again raised the argument that the MDLEA did not apply because the stop occurred in Colombian waters, not international waters. The district court found that the Coast Guard had reasonable suspicion to search the vessel, noting that the crew jettisoned items from the vessel, which appeared to be weighted down, was on a course consistent with drug smuggling, was moving erratically, and was operating at night without navigation lights. Ruiz-Murillo's motion to suppress also neither refutes nor contradicts the government's evidence that the district court used in determining that the search was reasonable. Accordingly, the district court did not err in refusing to conduct an evidentiary hearing on the suppression motion.