**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 24-12265

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

ADAM JOSEPH KING,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 4:23-cr-00039-MW-MAF-1

_____

Before ROSENBAUM, ABUDU, and ED CARNES, Circuit Judges.

PER CURIAM:

Adam Joseph King pleaded guilty to distributing five grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(viii). King contends that he is not subject to the

mandatory minimum sentence prescribed by 21 U.S.C. § 841(b)(1)(B)(viii) because a DEA lab report revealed that the methamphetamine he sold was 95% instead of 100% pure. He also contends that the district court abused its discretion by denying his motion to withdraw his guilty plea after he received the lab report. Finally, King challenges the supervised release component of his sentence. He contends that the district court violated his due process rights by stating that the "standard conditions" would apply without specifying at the sentence hearing what those conditions are.

## I.

A grand jury returned an indictment charging King with one count of distributing five grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(viii). In a signed statement of facts as part of a written plea agreement, King admitted that he had sold approximately 20.4 grams of methamphetamine to an undercover police officer. He pleaded guilty to the methamphetamine distribution offense as charged in the indictment.[1]

After he entered his guilty plea, a DEA lab report showed that the drugs he had sold to the undercover officer were not 100% pure. Instead, the methamphetamine weighed approximately 19.68 grams and had a purity of about 95%. The report calculated that to be the equivalent of 18.69 grams of pure methamphetamine

---

[1] King was also charged with and pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). He does not challenge his conviction or sentence for that crime.

24-12265                Opinion of the Court                3

(plus or minus 1.25 grams).  Even if the potential variation is sub-tracted, the amount of methamphetamine he sold is far more than five grams.  And five grams of methamphetamine is the threshold amount to trigger the 10-year statutory minimum for a defendant who already has a prior conviction for a serious drug felony, which King admits that he has.  *See* 21 U.S.C. § 841(b)(1)(B)(viii).

A person who has a "prior conviction for a serious drug fel-ony" is subject to a 10-year statutory minimum if he distributes "5 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 50 grams or more of a mixture or substance contain-ing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers." *Id*.  It's undisputed that King has a prior con-viction for a serious drug felony.  Even so, King argues he is not subject to the 10-year mandatory minimum because he did not sell *pure* methamphetamine.  Instead, the methamphetamine he sold was mixed with something and, according to King, it could be clas-sified only as a "mixture" containing methamphetamine and not as "methamphetamine."  Even though the methamphetamine he sold was 95% pure, he asserts that he sold less than 50 grams of a "mix-ture" containing methamphetamine, a quantity of drugs insuffi-cient to trigger the mandatory minimum.

Binding precedent forecloses King's argument.  In our *Fra-zier* decision, we rejected the defendant's argument that the statu-tory-minimum-triggering amount of methamphetamine he sold had to be pure or else had to be classified as a "mixture." *See United States v. Frazier*, 28 F.3d 99, 100–01 (11th Cir. 1994).  In that case,

possessing with intent to deliver 100 grams of methamphetamine triggered a 20-year statutory minimum. *See id.* We held that "'100 grams of methamphetamine,' as used in 21 U.S.C. § 841(b)(1)(A)(viii), refers to 100 grams of the drug *however it is found.*" *Id.* at 101 (emphasis added). Purity was not required so long as 100 grams of methamphetamine was involved in the offense. *See id.*

Adopting the reasoning of a First Circuit decision, we explained that accepting the defendant's position would lead to absurd results because "an offender with 95 grams of pure methamphetamine could add four grams of baking soda and escape the mandatory minimum, whereas a second offender with only 10 grams of the pure drug would be subject to a more severe penalty." *Id.* Instead, "the quantity of 'pure methamphetamine'" must be calculated by "multiplying the purity of the mixture by its weight." *Id.* The same formula was used to calculate the amount of "pure" methamphetamine that King sold to an undercover officer, which amounted to more than 18 grams.

And the same rule applies to King's drug distribution offense; 100% purity is not required. King sold more than 5 grams of methamphetamine, and he has a prior conviction for a serious drug felony. That means he is subject to a 10-year mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(B)(viii). *See Frazier*, 28 F.3d at 101.

King recognizes that his argument is foreclosed by our *Frazier* decision, but he insists that *Frazier* was wrongly decided and

24-12265                    Opinion of the Court                    5

asks us to reconsider it.  We cannot, and we will not.  Under the prior panel precedent rule, we follow our binding precedent unless and until it is overruled by the Supreme Court or this Court sitting *en banc*. *United States v. Vega-Castillo*, 540 F.3d 1235, 1236 (11th Cir. 2008).  That rule applies regardless of whether we think the prior panel decision is correct.  *See United States v. Gillis*, 938 F.3d 1181, 1198 (11th Cir. 2019).  And there is no "overlooked reason or argument exception to the prior-panel-precedent rule." *United States v. Deleon*, 116 F.4th 1260, 1264 (11th Cir. 2024) (quotation marks omitted).

The district court did not err by imposing the 10-year mandatory minimum required by 21 U.S.C. § 841(b)(1)(B)(viii).

## II.

Based on the lab report's finding that the methamphetamine he sold was not 100% pure, King contends that the district court should have allowed him to withdraw his guilty plea.  A defendant may withdraw his guilty plea after the district court accepts it and before the imposition of the sentence only if he "can show a fair and just reason for requesting the withdrawal."  Fed. R. Crim. P. 11(d)(2)(B).  We review the denial of a motion to withdraw a guilty plea only for an abuse of discretion.  *United States v. McCarty*, 99 F.3d 383, 385 (11th Cir. 1996).

King argues that until he received the lab report, he didn't know that the drugs he sold were a methamphetamine "mixture," so his plea was unknowing and involuntary.  But as we have just explained, *see supra* at 2–4, the lab report's finding that the

methamphetamine King sold was 95% pure had no bearing on the mandatory minimum sentence that King was facing under 21 U.S.C. § 841(b)(1)(B)(viii).  *See Frazier*, 28 F.3d at 101.

In his written plea agreement, King agreed that he faced a 10-year mandatory minimum sentence because he had sold five grams or more of methamphetamine and he had a prior serious drug felony.  At his plea colloquy, the court explained to King that he did face that 10-year mandatory minimum sentence.  He stated under oath that he understood the potential penalties he faced.  The court reiterated that, because King's drug offense carried a 10-year mandatory minimum sentence, the court had no discretion to sentence him to less than 10 years unless the government filed a substantial assistance motion.  King responded that he understood.  The court confirmed with King that no one had made promises to him that were not included in the plea agreement.  It also explained to King that he would be unable to withdraw his guilty plea if he received a longer sentence than he or his attorney had anticipated, and King said he understood that as well.

The court confirmed with King that no one had coerced or threatened him to plead guilty.  Ensuring that King understood the nature of the charges, the court told him that the government would have to prove beyond a reasonable doubt that he possessed with the intent to distribute a controlled substance that contained five grams or more of "methamphetamine."  Throughout the colloquy, King confirmed that he understood.

"There is a strong presumption that the statements made during the [plea] colloquy are true." *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994); *see also Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity."). For that reason, "when a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988).

King had close assistance of counsel, and he swore that he understood the charges against him, the elements of his offense, and the penalties he was facing. *See United States v. Buckles*, 843 F.2d 469, 472–73 (11th Cir. 1988). Even considering the lab report, under our precedent the 95% pure methamphetamine that King sold amounted to more than five grams. *See Frazier*, 28 F.3d at 101. The district court did not abuse its discretion by denying King's motion to withdraw his guilty plea.

## III.

Finally, King contends that the district court violated his due process rights because at his sentence hearing it imposed the standard discretionary conditions of supervised release without specifically describing what those conditions are. His presentence investigation report (PSR) recommended the standard conditions and stated that they were available at www.uscourts.gov in the Overview of Probation and Supervised Release Conditions. At King's sentence hearing, the court stated that the standard conditions would apply. King did not object to the court's pronouncement of

the standard conditions and did not ask the court for any clarification about what those conditions were.

Several mandatory conditions of supervised release are set out in 18 U.S.C. § 3583(d), and district courts are authorized to order additional conditions. *See* 18 U.S.C. § 3583(d). The United States Sentencing Guidelines allow other discretionary conditions and list the 13 standard conditions that are generally recommended, as well as several special conditions. *See* U.S.S.G. § 5D1.3(b)–(d). "[A] district court is not required to individually pronounce each discretionary condition of supervised release if at sentencing the court expressly incorporates a written list detailing those conditions." *United States v. Rodriguez*, 75 F.4th 1231, 1249 (11th Cir. 2023).

In our *Hayden* decision, we held that a district court's oral pronouncement of the "standard conditions" was sufficient when the court "referenced the 13 discretionary standard conditions of supervised release" that had been adopted in that district. *United States v. Hayden*, 119 F.4th 832, 838–39 (11th Cir. 2024). The conditions imposed in the written judgment were listed in the publicly available judgment form and tracked the relevant sentencing guideline. *Id*. at 839. There was no "conflict" between the oral pronouncement and the written judgment, which "specifie[d] what the oral pronouncement had already declared." *Id*. Under those circumstances, due process requirements were satisfied. *See id.*; *see also United States v. Read*, 118 F.4th 1317, 1321–22 (11th Cir. 2024) (explaining that "[c]oncerns about due process arise when a

24-12265          Opinion of the Court          9

sentence in the written judgment conflicts with the oral pronouncement" and holding that there was no conflict because the written judgment detailing the standard conditions adopted by the district "only expound[ed]" upon the oral pronouncement of the "standard conditions").

In its oral pronouncement of King's sentence, the district court did not err by failing to detail the standard discretionary conditions of his supervised release. The court referred to the conditions that were brought to King's attention in the PSR before sentencing and were publicly available on the website that the PSR mentioned. And in this case, as in *Hayden* and *Read*, there was no "conflict" between the oral pronouncement and the written judgment, which "specifie[d] what the oral pronouncement had already declared." *See Hayden*, 119 F.4th at 839; *see also Read*, 118 F.4th at 1322.

**AFFIRMED.**